# Richmond.

## RUTHERFORD v. MAYO.

### January 19, 1882.

1. ELECTION—JOINTURE—*Dower.*—Doctrine of election is founded on the same reasons and governed by the same rules when applied to a widow claiming dower as to any other case.

2. One entitled to benefit under an instrument must, if he claims that benefit, abandon every right the assertion whereof would defeat, even partially, any of the provisions of that instrument.

3. If the widow's taking dower would interfere with any of the provisions of the will she must elect. *Dixon* v. *McCue,* 14 Gratt. 540.

4. Testator died February, 1862, leaving considerable estate in lands, slaves, *choses in action,* &c., and a widow and five children. He gave each child $1,000 in money or land, and to the widow all the residue, *durante viduitate,* or if she married, only one-half of the same; how much not fully ascertained, but much more than her distributive share, and more than all the children together received. She did not renounce, but enjoyed these provisions, or those thereof which the war spared, for thirteen years.

HELD :

The provision was intended for her jointure, under Code 1860, ch. 110, § 4, and she elected it in lieu of dower.

CHANCERY PRACTICE—*Dower.*—On creditors' bill against testator's widow and others, all his real estate was, in 1872, so far as necessary to pay his debts, decreed to be sold, except the widow's dower right therein. Part of that real estate was one moiety of a tract of land and mill, which under the will his son-in-law S received, and S and wife had sold and conveyed same to R, to whom belonged the other moiety. In 1875 she filed her bill to have dower assigned her in said moiety, alleging that "she had been lawfully deprived of the provisions made for her by the will," seeking relief under Code 1860, ch. 110, § 4. The bill did not show how much or what part of those provisions she was deprived of, or that her dower had been excepted from sale; and all the legatees, not even S and wife, were made parties. To this bill R filed demurrer and

answer, and denied her claims. Bill was filed at May rules. Court be-
gan June 1st, and June 3d, 1875, court below overruled the demurrer,
and, against R's protest and motion for continuance, decreed that she
was entitled to dower, as she claimed in her bill.

HELD:

1. Demurrer should have been sustained for want of specification in
   the bill as to the extent to which she was deprived of the provis-
   ions made for her by the will, and for want of proper parties.
2. The cause, not being in a condition to be heard, should have been
   continued, to give opportunity for necessary accounts, enquiries,
   and evidence.

Appeal from decree of circuit court of Goochland county,
rendered June 3, 1875, in suit of Elizabeth W. Mayo against
Thomas Rutherford. In February, 1862, George W. Mayo
died testate, leaving considerable estate in land, slaves,
*choses in action*, &c. He gave each of his five children $1,000
in money or land. To Elizabeth, his widow, he gave, du-
ring widowhood, all, and if she married one-half, of the
residue. It is not ascertained how much, but it was much
more than her distributive share would have been, and
even more than all the children together received. She
did not renounce this provision, but enjoyed it for many
years. The estate having been wasted and lost to consid-
erable extent by the results of the war, a creditor's suit
was instituted against the widow and others, and in 1872
all of the real estate whereof he died seized was, so far as
necessary to pay his debts, except the dower right therein
of the widow, decreed to be sold. How much was sold, or
how much was the debts to be paid, the record does not
disclose. In 1875 she filed her bill against Thomas Ruth-
erford to have dower assigned her in a moiety of a certain
tract of land and mill, which the testator's son-in-law,
James M. Siddons, had received under the will, and which
Siddons and wife had afterward sold and conveyed to
Thomas Rutherford, to whom belonged the other moiety.
The bill was framed with a view to relief, under Code

1860, ch. 110, § 4, and alleged that "she had been lawfully deprived of the provision made for her by the will." It was indefinite, and did not state how much, or what part of those provisions she had been deprived of, or that in the decree of sale of her husband's real estate her right of dower therein was excepted; and the legatees and devisees, not even Siddons and wife, were made parties. Rutherford demurred and answered, denying plaintiff's claim. Bill filed May rules. Court met June 1st, and on June 3d court below overruled the demurrer and defendant's motion to continue, and decreed that she was entitled to dower, as she claimed in the bill. Opinion of court states the remaining facts. From this decree defendant appealed.

*Guy & Gilliam,* for the appellant.

1. The provision made for appellee by her husband's will was intended to be in lieu of her dower, and was so accepted by her. It was a liberal provision. For her to enjoy this provision and still have dower would have deranged the whole scheme of the will. Code 1873, ch. 106, § 4, p. 854; *Craig* v. *Walthall,* 14 Gratt. 518; *Dixon* v. *McCue,* 14 Gratt. 540; *Chalmers* v. *Storie,* 22 Es. & Bea. 222; *Dickson* v. *Robinson,* Jacob, 503; *Roberts* v. *Smith,* 1 Sim. & Steuart, 513; *Bailey* v. *Boyce,* 4 Strobhart Eq. 84.

2. Was she lawfully deprived of the provisions made for her by the will, so as to entitle to be endowed, under Code 1873, ch. 106, § 6—not generally of the husband's real estate, but of so much thereof as is equal in value to that of which she was deprived?

The bill does not show to what extent or of what part of those provisions she was deprived of, nor that in the decree of sale of her husband's land, dower was reserved to her. For this defect, and for defect of the devisees and legatees, especially Siddons and wife, the demurrer to the bill should have been sustained.

3. Suit was brought to May rules; court met June 1st, and decree complained of was rendered June 3d, 1875. Appellant's motion for a continuance in order to take evidence should have been sustained.

4. That decree was also erroneous, in that it allowed appellee damages for detention of her dower for five years before the commencement of the suit, when the decree of sale under which, if at all, she was so deprived, was rendered only two years and five months before her suit was brought.

*A. K. Leake,* for the appellee.

1. V. C. 1860, ch. 110, § 4, in force at the date of the will, differs from V. C. 1873, ch. 106, § 4, to which has been added the words : " Every provision by deed or will shall be taken to be intended to be in lieu of dower, unless the contrary intention plainly appear," &c. It does not so appear from the will. The provision lacked the technical requisites of a jointure. 2 Minor's Ins. 153.

2. The intention can only be gathered from the will, and must be clear and unambiguous. There is no repugnancy in such devise to her title to dower. 2 Sto. Eq. Jur. § 1088 ; 1 Jarman on Wills, p. 382 (397); *Higginbotham* v. *Cornwell,* 8 Gratt. 83 ; *Ambler and Wife* v. *Norton,* 4 H. & M. 38 ; *Blunt and als.* v. *Gee and als.,* 5 Call 481 ; 1 Lomax Digest, 127–30, side paging. This gift was only in a *residuum.* *Ayres* v. *Willis,* 1 Ves. 230.

ANDERSON, J., delivered the opinion of the court.

The bill was brought by Mrs. Mayo, the widow of George W. Mayo, to have dower assigned her in the undivided moiety of a tract of land and mill, which was the joint property of her husband in his lifetime, and Thomas Ruth-

erford, the appellant; which undivided moiety was devised by her husband to his son-in-law, James M. Siddons, and his daughter, Calisa J., the wife of said Siddons.

Two principal questions arise in the case: "First. Did Mrs. Mayo receive a bequest from her husband which was in lieu of dower? And, second, Has she been lawfully deprived of it, or of a part of it? and of how much of the real estate should she be endowed to be of equal value to that of which she has been deprived?

The testator directs his executors to pay whatever debts he may leave unpaid at his decease, and his personal expenses. And after making bequests to his five children of the value of $1,000 to each, he gives to his wife "all the balance of his estate, both real and personal," while she continues his widow, but if she marries, then only half of the same; and if any of the servants are troublesome, and she requests it, he directs his executors to sell such, and arrange for her to have the interest on the money in the place of such slave, or slaves.

He wishes his wife to take care of his aged mother, and if she should live longer than his wife, he requests his executors to take charge and care of her.

He wishes his son John to remain with his mother, and hopes she can reasonably remunerate him.

He then provides for the *equal* division of all his estate amongst his heirs, after the death of his wife, with restrictions as to George's part, which he afterwards removes by a clause in a codicil.

He authorizes his executors, if they think it best, to sell the land without a decree of the court. And he wishes the comfort of the slaves to be consulted, as far as practicable, and if some are obliged to be sold to make an equal division, he wishes them to be put where they are disposed to go, even at a loss of one-fourth of their value. And he

appoints his son John W. Mayo and his son-in-law Daniel Carter his executors.

What was the value of the property he bequeathed to his wife ? The bill asserts that, as will be seen by his will, the said George W. Mayo was seized and possessed of a considerable estate, real and personal, at the time of his death. Of his bequests to his children of $5,000, they are charged by the will with upwards of $1,600, which was paid them before his death—leaving only $3,400 to be paid them in land and money—which would seem to be a very small part of a considerable estate, real and personal.

The answer avers that the provision made for his wife was given and intended as a jointure, and in lieu of dower. That it embraced the homestead on which the testator resided, consisting of thirty-five acres, with a good, comfortable dwelling and the necessary out-houses in good repair—such as stable, wheat and tobacco barns, servants' quarters, &c., worth at least $800 or $1,000; also, a tract of land in Missouri, which, he is informed and believes, consisted of 60 acres, near a village, and was very valuable— its value not known to him—and a considerable amount of personal property, consisting of household and kitchen furniture, farming implements, live stock, farm produce, eleven slaves, and outstanding debts due him, amounting in the aggregate to $7,005.16, after deducting the special pecuniary legacies, which amounted to $1,198.89; and he makes an exhibit of the inventory of appraisement of the personal estate rendered on the 27th of March, 1862, as part of his answer in support of his averment. Said inventory and appraisement bill shows that eleven slaves were appraised, and that the whole inventory summed up $8,204.05. The said appraisement was signed and sworn to by three of the appraisers appointed by the county court of Goochland, and John W. Mayo, executor of George Mayo, deceased, underwrites over his signature : "I return the fore-

going as a true inventory of the estate of George Mayo, deceased."

It is true that affirmative averments, when unsupported by evidence, do not establish the facts averred, and they are adverted to, and others will be, as important averments, which the court below should have allowed the defendant time to take depositions to prove.

But there is enough proved to show that a liberal provision was made by the testator out of his estate for his widow, and that it was ample for her support, and that it would have been judicious in her to take it in preference to dower in his lands and her distributive share of the personal estate.

Was it intended to be in lieu of dower, and accepted by her as such?

In *Dixon* v. *McCue and als.*, 14 Gratt. 548, Judge Daniel says the general principles in reference to this question are few and well ascertained, notwithstanding much apparent conflict in the application by judges of those principles to particular cases. "The cardinal doctrines upon the subject (he says) are clearly and concisely stated by Vice-Chancellor Kindersley in the case of *Gibson* v. *Gibson*, 17 E. L. and E. R. 349. The first principle (he says) is, that the doctrine of election is founded on the same reasons and governed by the same rules when applied to a widow claiming dower as when applied to any other case. The second proposition, as applicable to all cases, is, that a person who is entitled to any benefit under a will or other instrument must, if he claims that benefit, abandon every right or interest, the assertion of which would defeat, even partially, any of the provisions of that instrument. . And applying this to the case of dower, the doctrine is, that if the testator has made such a disposition of his real estate as that the assertion by the widow of her right to dower would prevent that disposition taking effect as the testator

intended, then she must elect to abandon either her dower or the benefit given her by the will." He adds a third proposition, "that in no case is a person to be put to an election unless it is clear that the provisions of the instrument under which he is entitled to any benefit would be in some degree defeated by the assertion of his other rights," which principle he applies also to the particular case of dower.

The application of these principles to our case is easy and apposite. It was the manifest intention of the testator to make his children equal, and his purpose was to give each of them in money, or in land and money, or in land to the value of $1,000. To George he gave land and money to the value of $1,000; to Daniel Carter and Godfry Isbell, his sons-in-law, he gave each $1,000 in money, charging them with what they respectively owed him; to John he gave, at his option, a negro man valued at $1,000, or land valued at $700 and $300 in money, or a negro girl valued at $300, at his election; and to his son-in-law James M. Siddons, and his daughter Calista, the wife of Siddons, $1,000, wholly in land. Now, it is manifest that the assertion by the widow of her right of dower would prevent that disposition taking effect as the testator intended; consequently, according to the rule as laid down, she must elect to abandon either her dower or the benefit given her by the will. She did elect to take the benefit given her by the will, and has had the use and enjoyment of it for many years. She must be taken, therefore, to have abandoned her right of dower.

We come now to the second inquiry. The bill alleges that some years ago a chancery suit was instituted against the real and personal representatives of the said George W. Mayo, by and on behalf of his creditors, in which suit all his lands have been sold, and that complainant has been thus deprived lawfully of the provisions made for her by

the will. The answer denies that all the lands of the testator have been sold in the creditor's suit of *Carver's Adm'r* v. *Mayo's Ex'or*, as alleged. The plaintiff files a copy of a decree in Goochland county court between Wingfield, sheriff of Hanover, and as such administrator of John H. Carver, deceased *v.* Betsy Mayo, widow of George Mayo, and others. That was not a decree in the circuit court of Goochland, nor does it appear to be a suit by and on behalf of George Mayo's creditors. It does appear from that paper that a commissioner was appointed by the county court to sell the real estate of which George Mayo died seized and possessed (it does not say all), except the dower right of Betsy Mayo, the widow of said George Mayo. There is nothing to show that said decree has ever been executed, or that all of decedent's lands were sold as this bill alleges. The answer denies that all were sold. That allegation being unsupported by evidence, falls to the ground. And he avers that such as were sold were sold by her consent. The decree shows that her dower in the lands decreed to be sold was exempted. The decree does not show, nor is there anything in the record to show, the amount of debt for which the land was decreed to be sold. It may have been large or small. The sale of a part of the lands may have been sufficient to satisfy the debt. Of course the commissioner would not continue the sale of other lands after he had sold enough to pay the debt.

Nor does it appear from the face of the decree that the court directed an assignment of dower to the widow. It does not appear that the question of her right of dower was litigated and decided. It only appears that the court directed it should not be sold. The bill admits that her dower right in the lands sold was sold by her consent.

These are the allegations of what losses the complainant sustained by being lawfully deprived of a portion of her jointure, and it is very indefinite. Upon such statements

it would be impossible for the most skillful and experienced master to audit an account showing the amount of loss she sustained; and yet to that extent only would she be entitled to be endowed.

There is no specific allegation in the bill that the plaintiff's homestead where she resided, and which she took under the will, or that she has been lawfully deprived of any of the specific property which she took under the will. The answer avers that she took possession of all the real and personal property which was bequeathed to her by the will, except the Missouri land, and has disposed of it as her own or still holds it, except the slaves, which were freed by the results of the late war; and that she elected to take the provision made to her by the will, and again and again expressed herself as perfectly satisfied with it. The case was not in a condition to decide what amount of remuneration, if any, the complainant was entitled to. There ought to have been an account directed, and all the legatees and devisees ought to have been convened before the court, and the demurrer for the cause that they were not ought to have been sustained, and reasonable time ought to have been allowed the defendant for taking depositions to sustain the affirmative averments of his answer, which it was not possible for him to have done after his answer was filed, which was filed in less than a month after the bill was filed, and on the same day the cause was brought to a hearing and the decree complained of against his protestation was pronounced.

Upon the whole, the court is of opinion that the provision made by the will of George Mayo in favor of his wife was in lieu of dower, and that she made her election to accept said provision in satisfaction of all claims for dower. But the court is further of opinion, that it does not appear to what extent she has been lawfully deprived, if at all, of

the provision aforesaid made for her benefit. The court is, therefore, of opinion to reverse the decree of the circuit court, with costs; and to remand the cause to the said circuit court for further proceedings to be had therein, in conformity with the principles declared in this opinion.

DECREE REVERSED.