Nichols, C. J.
Sallie J. McCall, a resident of Hamilton county, Ohio, died March 6, 1909, leaving a last will and testament. She left surviving her her husband, William A. McCáll, and the important question in this case is whether or not William A. McCall elected to take under, her will.
■ The items of the will of testatrix pertinent to this question may be briefly stated as follows:
By item 1 the testatrix devised certain real *289 estate known as the “Andover Building1” in Cincinnati to certain trustees in trust for the benefit of the (Colpred Industrial School of Cincinnati, said (rústéés to incorporate said school and convey said real estate to it.
,p By item '2 she devised certain real estate on the north side of Fourth street in Cincinnati to her hus^ band, William A. McCall, during his natural life, with remainder after his death to the said trustees in trust for the Colored Industrial School, of Cincinnati, in the same manner as .the property devised to said school by item 1.
'■ By item 4 she devised certain real estate on Clinton street in Cincinnati in. fee simple to the Ohio State Society for the Prevention of Cruelty to Children and Animals.
By item 8 she devised certain real estate on Main aVén'úe, Avondale, Cincinnati (being the homestead of herself and husband), to her husband, William A. McCall, in fee. , She also bequeathed to him all tlie furnilure and household belongings in said house, except such as were otherwise specifically devised. ’ .
'By item 13 of said will she provided that after the payment and discharge of all bequests made in the will, all bonds and the remainder of all stocks owned by her at the time of her death were bequeathed to the said trustees in trust for the Colored Iridtistrial School of Cincinnati, in the same manner as the property bequeathed in item 1.
By itenji 14 she appointed her husband, William A. McCall, executor of her will.
On the date of the probate of the will, March 25, *290 1909, William A. McCall was duly appointed and qualified as executor.
On September 5,1909, six months after the death of his first wife, William A. McCall was married to Mary A. Andrews, and on September 9, 1909, he died leaving the said Mary A. Andrews McCall, his widow, surviving him.
No citation was ever issued by the probate court to the husband to appear and make his election as provided by Section 5963, Revised Statutes (Section 10566, General Code), and no election was ever made by him in the probate court. He had not settled the estate of his deceased wife or filed an account as executor, at the time of his death. No children were born to either Sallie J. McCall or William A. McCall.
The estate of Sallie J. McCall consisted of the four pieces of real estate in Cincinnati specifically devised by the items of the will to which we have above referred, and a personal estate of the appraised value of $250,325.49; of this personal estate $245,584.25 was in stocks and bonds and the balance was in household furniture, money and overdue, coupons. The debts of the estate were comparatively small in amount.
. After the death of William A. McCall, an administrator de bonis■ non with the will annexed was appointed of the estate of Sallie J. McCall, and an administrator of the estate of William A. McCall.
The claim is made that William A. McCall having died without electing to take under the will of his wife, his estate is entitled to its statutory share of her estate. On the other hand it is claimed that, *291 though'William A. McCall made no formal election to take under said will, yet by his acts he did, as a matter of fact, elect to take under the will of Sallie J. McCall, and his estate is entitled only to the property given to him by said will.
The acts of William A. McCall which are relied upon to establish an election upon his part are the following:
(o) William A. McCall, at the time of his wife’s death an,d the probate of her will, was a retired business man, seventy-eight years of age, in good health and full possession of all his mental faculties. Immediately after the death of his wife he employed counsel, proceeded with the administration of the estate, caused an inventory to be made and was advised by counsel as to his rights under the will and under the law.
(b) Early in April Mr. McCall gave the agent appointed by the trustees of the Colored Industrial School all necessary information concerning the tenants in and rentals of the Andover building, and also went with the rent collector of said agent to the Andover building, introduced said collector, to all the tenants in said building and instructed said tenants thereafter to pay their rent to said collector. From that time on all the rents from said building were paid to and collected by said agent without any objection whatever on the part of Mr. McCall.' Mr. McCall also turned over to the agent of the said tiustees the insurance policies on said building.
(c) Beginning with the rent due in April and Horn that time on until the date of his death Mr. McCall collected the rent from the Fourth street *292 property and deposited it in his individual account in bank, and not in the account kept by him as executor,. though he gave receipts signed by himself as executor. This Fourth street property is the property, mentioned in item 2 of the will of Sallie J'.' McCall, which was devised to the said William A. McCall for and during his natural life, and after his death to the trustees for the said Colored Industrial School in fee. The policies of insurance on this Fourth street property were indorsed by the agent of the insurance companies'to the effect that Mr. McCall had a “life interest” in the property. This indorsement was made at Mr. McCall’s request. The sanie indorsement is made on the policies of insurance on the Avondale property, which had been devised to Mr. McCall in fee."
(d) Mr. McCall took possession of all the personal property in the Avondale house,' including property specifically bequeathed to thé.'Cíncimíáti Art Museum, the gift to become effective after the death of Mr. McCall. Mr. McCall1 during his life gave away some clothing which had belonged to his w.ife. 1 , •
(<?) Mr. McCall was elected as one óf the trfistees for the Colored Industrial School and atterided1 one meeting.
(/) He executed a quitclaim deed to' the púrcha'ser of the Clinton street property, when the 'purchaser declined to take the property from the devisee, the Ohio State Society for the Prevention of Cruelty to Children and Animals, unless Mr. McCall made his election tó take under the will or execute a quitclaim deed.
*293 (g) Mr. McCall paid the taxes on the Andover building, Foürth street property and- the Clinton street property out of the funds of .the estate of Sallie J. McCall and credited, himself, as executor with such payments. The taxes on the Avondale property he paid out of his individual account'
(h) Mr. McCall had full knowledge of the extent of the estate of Sallie J. McCall and of his fights under the will at the time of the acts above relied upon.
Under the circumstances of this case, are any of of the above acts, or all of them taken together,' sufficient to constitute an election in fact on the part of 'William A. McCall to take under the will of Sállie J: McCall?
The statutes governing the matter of election under a will as they stood at the date1 of the dedth of Sallie J. McCall were Sections 5963 and 5964, Revised Statutes, which have been carried into the General Code as Section 10566 ef seq. These sections as they appeared in the Revised Statutes are as follows: :
“Sec. 5963. If any provision be made for a widow or widower in the will of the deceased consort, ' the probate court shall, forthwith/aftef the probate of such will, issue a citation to such widow ,or widower to appear and elect whether to take such provision or to be endowed of the lands of the deceased consort and take the distributive share of the personal estate; and such election shall be mad'e within one year from the date of the service of the citation aforesaid; proAdded, that such Avidow br widoAver may, dt any time before the period of such *294 election has expired, file her petition in the court of common pleas for the proper county, making all persons interested in said will defendants to such petition, asking a construction of the provisions of said will in her or his favor, and to have the advice of said court, or of the proper appellate court on appeal thereon; and if proceedings for such advice, or proceedings to contest the validity of such will be commenced within such year, the' widow or widower shall be entitled to make election within three months’ after such proceedings shall have ■ been finally disposed óf, and said will shall not have been ‘set aside; but the widow or'widower shall not be entitled to both dower and the provisions of the will in her or his favor, unless it plainly appears by the 'will to have béen the intention that the widow or 'widower should have such provision in addition to the dower and such distributive share.”
■ “Sec. 5964. The election of- the widow or widower to take under the will shall be made in person, 'in the' probate court of the proper county, except as hereinafter provided; and on the application by ‘a widow or' widower to take under the will, it shall be the duty of the court to explain the provisions 0$ the will, the rights under it, and by law in the 'event' of a refusal to take under the will. • The election of the widow or widower to take under the will shall be entered upon the minutes of the court; and 'if''the widow Or' widower shall fail to make such election^ the widow or widower shall retain the dower, and such share of the personal estate- of the deceased- cónsort -as the’ widow or widower would ’be' entitled to by law in case the deceased consort *295 had died intestate, leaving children. If the widow or widower elect to take under the will, the widow or widower shall be barred of dower and such share, and take under the will alone, unless as1 provided in the next preceding section; but such election by the widow or widower to take under the will shall not bar the right to remain in the matlsiori of the deceased consort, or the widow to receive one year’s allowance for the support of herself and children, as provided by law, unless the will shall expressly otherwise direct.”
These two sections are based upon sections 45 and 46 of the original act relating to wills, passed March 23, 1840 (38 O. L., 120). They.have been often amended and before the court many times.' As originally passed, the statute provided for an election within six months and made no provision for citation; and it was at one time'held,'at least by inference, that the only manner of making an election is that provided by statute. Stilley v. Folger, 14 Ohio, 610.
But in so far as that case held that the only-method of making an election is that "provided by statute, it was overruled by the subsequent ease of Lessee of Thompson v. Hoop, 6 Ohio St., 480; and. il has, at least since the decision of the last case, been settled in this state that an election to take under a' will can be made by a widow or widowér by acts-which would estop her or him from denying such election. Baxter, Admr., v. Bowyer, 19 Ohio St., 490; Stockton v. Wooley, 20 Ohio St., 184; Millikin v. Welliver, 37 Ohio St., 460; Posegate v. South, 46 Ohio St., 391; Mellinger v. Mellinger, 73 Ohio *296 St., 221. We know, of no exceptions to this rule in, any of, the other states.
But while an election to take under the will may be made by acts of the party, it is settled that the act or acts relied upon as constituting an election b)r conduct mus.t be plain and unequivocal, done with k full knowledge of rights under the will and under the law respectively and of the true condition of the estate and generally be of such long duration ns clearly show;s a purpose to take under the will. Reed v. Dickerman, 112 Pick., 146; Delay v. Vinal, 1 Met. (Mass.), 57, 65; Lessee of Thompson v. Hoop, 6 Qhio St., 480, 485; Stark v. Hunton, 1 N. J. Eq., 216, 227; Caston v. Caston, 2 Rich. Eq., 1; Craig’s Heirs v. Walthall, 14 Gratt., 518, 525; Clay v. Hart, 7 Dana, 1, 6; Haynie v. Dickens, 68 Ill., 267; Cory v. Cory, 37 N. J. Eq., 198, 201; Rutherford v. Mayo, 76 Va., 117, 123; Exchange & Deposit Bank v. Stone, 80 Ky., 109; Clark v. Middlesworth, 82 Ind., 240, 247; Wilson v. Wilson, 145 Ind., 659; Cooper v. Cooper’s Exr., 77 Va., 198, 205; Hovey y. Hovey, 61 N. H., 599; English v. English’s Exr., 3 N. J. Eq., 504; Shaw's Devisees v. Shaw’s Ádmr., 2 Dana, 341; Forester v. Watford, 67 Ga., 508.
Our statute is different from that of many olhr-states in that by express terms of the statute itself' a failure to elect to take under the will within the time prescribed by law works a presumption that the party repudiates the provisions of the will and takes undej* the law.
The statute was primarily intended to protect the interests of the widow. Since 1889 it has in- *297 eluded, of course, widowers as well as widows. It provides that the surviving consort must have an opportunity of making definite choice whether acceptance will be made of the provisions of the will ,or'whether the rights accorded to the party by the law will be retained irrespective of the will. The law provides that the widow or widower shall have one year from the time of issuing of citation to elect, to make choice as to the alternative, and this time is granted so that opportunity may be given to ascertain all the facts in regard to the estate in arriving at a determination as to what may be to the best interest of the party electing. This is plain from the provisions of the act allowing the surviving consort to bring an action for the construction of the provisions of the will in his or her favor before exercising choice, and that when such action is brought the period for election is extended three pionths after final disposition of such proceedings for construction. There is no sentiment about the law. It presumes that the widow or widower in making election will be guided wholly by her ór his interests; in fact, the law provides (Sections 10574 and ip575, General Code) that in the case of a widow or widower of unsound mind the court, if satisfied that the provision made by the will is more valuable than the provision made' by law, shall el^ct for such incompetent widow or widower' to take under the will, and of' course, under the statute itself, the court can only make this election when it is satisfied that the provision made by the will is more valuable and better than the nrovision by law. The widow or widower can only take under the will *298 by electing sq to do. If she or he does not elect, then she or he takes under the law. Therefore (as in the case at bar), when no citation has been issued land when the widower dies in less than a year after the probate of The will of his wife without having made a: formal election, it must take some clear and convincing act to constitute an election upon his part ,to take under the will; some act that is clearly inconsistent with an intention not to take under the law. It is impossible to prescribe any absolute rule under which to designate what acts are sufficient to constitute an election. Each case must be determined by the circumstances peculiar to it.
, :The fact that William A. McCall died within the period 'allowed for his election, that he made no formal election and that no citation was issued, brings him clearly within the statute as taking under, the law.
. i This, as we have pointed out before, can of course . be- controverted by clear proof that he in fact took ■■under the will, but in the absence of such proof the ■law. presumes that he elected to take under the law.
]• If there- is any presumption in the case the presumption is that he took under the law, for: the ¡reason that the law contemplates the widow or widower -will .accept the most valuable provision, and •from the'extent of this estate, as. shown by' the inventory, we have no doubt that it was clearly to Mr.' McCaU’s pecuniary advantage,not to accept the provision made for him by the will.
Now, considering briefly the facts relied upon in this -case, can any of them or all of them be considered as acts which show plainly -and unequivo *299 cally that Mr. McCall accepted the provision: made: ,- for' him by the will? We are of - the opinion that,! they do not. The estate was very large.. Mr. McCall • was appointed as executor. He knew that he had , a year in which to decide whether he would take under the will or under the law. As. executor it, was his duty to administer the estate and this he proceeded to do. The statute does not,provide that,, he must exercise his choice immediately upon being . advised as to his rights. On the contrary, it expressly. provides that he shall have one year after he is cited by the probate court in which to make his , election. The Andover building was, . given > ex- _ pressly to the trustees for the Colored Industrial School. These trustees were entitled, to the rents from it from the date of the death of Sallie J. McCall.. Mr. McCall had no interest whatever in these rents unless dower should be assigned. If he should decide to take under the law then he would have a claim for dower in said property. Neither did he have any right in the insurance policies upon this building. Whether he elected to take under the will • or under the law, the property went to the trustees • of the Colored Industrial School, the only difference being that in one event he would have a dower interest in the property and in the other event he would ■ have no interest in it. Therefore, what he did in , connection with this property does not amount to an acceptance by him of the provision made for him by the will.
His acts in connection with the Fourth street property we regard as the strongest upon which to base the contention that he elected to take under *300 the will. If he took under the will he was entitled to rentals from this building for his life. On the, other hand, if he took under the law he would have. no right to these .vents—he.would only have á dower interest in the property. Therefore, the fact that he collected the rents and placed them in his own individual account was consistent with his taking under the will .and, disconnected, with the Qther circumstances as-to his situation and rights, inconsist- : erit .with his_taking under the law. But we cannot overlook the fact that Mr. McCall was acting as executor of his wife’s estate; that until he made his election there was no one else to collect these rents audit .was therefore proper for him to do so; that said collections were made during a period allowed him by law within which to come to a decision as to his election; that while he placed the money so collected in Jus own individual account, the record shows that at all times he had in his account a sum greater than the total amount of rents collected, and, therefore, had he elected to take under the law such amount would have been regarded as held by him in trust for the persons entitled to the same; and the fact that he had it in his possession at all times made it at all times possible for him to make . known his election to take under the law and that'hie held said money for the person or persons entitled to it.
In other words, while his collecting arid depositing of these rents to his own individual account was consistent with his taking under the will, it was riot inconsistent with his taking under the law if he elected so to do at any time while he lived. No ' *301 rents were lost by his conduct as to this property, and so long as he did not appropriate and actually use the property it cannot be said that his acts constituted a clear and unequivocal election to take the provision made for him by the will.
We do not regard the indorsements on the insurance policies as material. These indorsements were made by the agent at Mr. McCall’s request! Neither Mr. McCall nor the agent seemed to be very clear as to the interest which Mr. McCall had in the properties.
As to the Avondale property, that was the homestead of Mr. McCall and he simply continued to reside there after his wife’s death. He had a right to'reside there for one year whether he took under the will or took under the law, and, as stated above, he knew that he had at least one year in which to. make up his mind whether he would take under the will or under the law, and his conduct with reference to this property shows nothing one way or the other.
We do not think, either, that the fact that he was elected one of the trustees of the Colored Industrial School and attended.one meeting throws any light upon the controversy. So far as the record shows he had nothing to do with his election nor did he take any active part in the proceedings of the trustees. ' There would possibly be nothing inconsistent in his taking under the law and also acting as one of the trustees for said school.
As to the execution of the quitclaim deed for the Clinton street property, this act could probably be construed either way; more logically perhaps as *302 showing' an intention to take under the law. If he: had intended to take under the will then undoubtedly he would have complied with the request of the purchaser and filed his election and avoided the necessity of making a quitclaim deed. As he did not do this but made a quitclaim deed, it is presumed that he had some interest in the property, or supposed he would or might have, and thus released it. The only real significance of this act, as we view it, is that it shows that at the time Mr. McCall made this quitclaim deed he was undecided whether he would take under the will or under the law.
The above brief review of the acts relied upon gives our view of their significance as we understand said acts from the evidence disclosed by the record.
We have examined carefully all of the cases referred to in the briefs and many others, and it is clear that to establish by acts an election to take under the will, where the widow or widower dies within the period allowed by law to make such election, such acts must be plain, unequivocal, done with a full knowledge of all the circumstances, of the rights under the will, of the extent of the estate, and .must be such as would estop the widow or widower from denying, within such period, that she or he had so elected, had she or he lived and applied during such period to take under the law.
Practically all of the cases where an election to take under the law is involved are cases where the acts not only were plain and unequivocal but were also of long duration. After careful examination of all the cases referred to in the briefs as well as *303 other cases cited by the text-writers, we are more than’ ever impressed with the language of Johnson, J., in the case of Millikin v. Welliver, 37 Ohio St., 460, 467, that-“It is believed no case can be found where the facts are held sufficient to amount to an election to waive the widow’s rights under the law, unless they are of such a marked character and of such long duration as will clearly and distinctlv evince a purpose to take the provisions of the will, and to operate as an effectual equitable bar to dower.”
We do not think it necessary to comment further upon the authorities cited. All of them are in accord with and none of them is contrary to the view that during the period given by the statute within which to make an election to accept the provision made by the will, unless the widow or widower makes a formal election, as provided by the statute, no act can be construed as such an election unless it be an act which would estop a widow or widower should she or he make application for an assignment of dower and distributive share of the personal property during such period.
The court of appeals found all of the bequests made in the will and the codicils of Sallie J. McCall, except the bequest to the trustees for the Colored Industrial School, were specific bequests and should be paid out of the estate before , the bonds owned by her and the. remainder of the stocks owned by her at her death should go to the trustees for the Colored Industrial School as provided in item 13 of said will, and that any deficiency in the share of William A. McCall, by reason of the delivery in *304 full to said specific legatees of' their specific bequestSi should be borne by the said- tftistees of thfe Colored Industrial School. " 1 "
To this finding of the court of' appeals" special exception is' made by- counsel for the Colored Industrial School, and it is claimed that the legacy to the-Colored Industrial School by item 13 of "the will is also a specific legacy and is no more chargeable with the payment of claims and expenses than a'ny other specific-legacy.
It is also claimed that the legacy to the National American Woman Suffrage Association, given by item 10 of the will and item 7' of the first codicil, is a general and not a specific legacy. • ’ 11 '
■ Without making fine distinctions and comparing authorities as to what are and what are not specific legacies, it seems clear-that it was'the intention':of-the testatrix, ■ gathered from the whole will and from the language used in item 13, that’the bequest to the- Colored Industrial -School was only to be made after the payment-and discharge of all the ether bequests named in the will, and therefore the decision of the court of appeals in this respect is correct. - Nor does it- seem that there should be' any question but-that the-devise to the National American Woman Suffrage Association was specific-and was among the. legacies to be paid before the bequest to ■ the ■ Colored Industrial School given; by-item 13 of the will. ■ ■ • <
-The seventh item- of the firstcodicil plainly subst» - t-uted the stock-of The Cincinnati- Street-Railway» Company for the stock-of The Cincinnati,-Hamilton-&-Dayton-Railway.-Company bequeathed by item 10- *305 “cf the will to the National American Woman Suffrage Association, such last-named stock having been disposed of by the testatrix subsequent to the time of making the will and prior to the date of the execution of the first codicil.

Judgment affirmed.

Shaucic, Johnson, Donahue,- Wanamaker, Newman and Wilkin, JJ., concur.