WILSON ET UX. *v.* WILSON ET AL.

[No. 17,567.  Filed September 29, 1896.]

WILLS.—*Election of Widow by Implication.—Estopped From Taking Under the Law.—Statute Construed.*—Where a testator devised all of his real estate to his wife during life, the wife being present at the time of the execution of the will and heard it discussed by the testator and draftsman, and after the death of the testator leased the entire farm to her son, from whom she received from year to year one-third of all the products thereof, and during such time made repeated declarations that the land was her own as long as she lived, and that she was to reside thereon during life, and at her death it was to be divided among the children of her deceased husband, and who asserted ownership of the entire farm for a period of nearly ten years, kept up improvements and paid the taxes, during such time executes a written lease in which she declares that she rents and leases "her farm on which she now lives, etc., so long as she may live," such acts and declarations will be held under section 2505, R. S. 1881, to amount to an election to take under the will and not under the law.

SAME.—*Election by Widow.—Estoppel.*—Where the wife of a testator elects to take under the will she is bound thereby and estopped from exercising any right or setting up any claim or title to the real estate under the law as widow of her deceased husband.

From the Marshall Circuit Court. *Affirmed.*

*A. B. Hess,* and *J. D. McLaren,* for appellants.

*S. Parker,* for appellees.

JORDAN, J.—Appellees instituted this action in the lower court to set aside a deed, executed by Elizabeth Wilson to the appellant, John W. Wilson, whereby she sought to convey a certain interest in fee-simple in the real estate in question.  The appellees were successful in this action, and over a motion by appel-

lants for a new trial, obtained a judgment setting aside the deed in controversy.

The facts alleged in the complaint summarized are as follows: Appellant, John W. Wilson, is the son of Abijah and Elizabeth Wilson, and appellees are their children, some of them being their grandchildren. Abijah Wilson died testate at Marshall county, Indiana, in October, 1880, the owner in fee of the land described in the complaint, leaving surviving him his widow, Elizabeth Wilson. By the last will of said Abijah, which was duly probated on the 16th day of December, 1880, he willed and gave to his said wife, Elizabeth, all his property, both real and personal, the realty being that mentioned in the complaint, with all the proceeds thereof, to hold for and during her natural life, subject to the payment of his debts. After the death of his wife the will provided that all of said property remaining should be sold to the best advantage and the proceeds divided among his children, naming them, subject to certain advancements. After the probate of the will, it is alleged: "that said widow never made any express election in writing by which she signified her intention and purpose to take under said will or under the law, but with a full and complete knowledge of said will, and with a full and complete understanding of its provisions as the same affected her interests, and of her right to accept the provisions of said will and to take thereunder, or to reject the provisions of said will in her favor and take under the law; she, agreeable to the terms of said will, continued in the possession of all of said real estate and personal property from the time of her said husband's death down to the 26th day of September, 1890. She paid all the taxes against said land, and kept up the improvements thereon, and gave out to her said children and persons in the neighborhood that she held

said property under the will, and that she was to possess and use it until her death. That shortly after the death of her said husband she, by verbal lease, rented all of said lands from year to year to her son George Wilson, until June 10, 1890. The latter held possession thereof, and farmed the same as her tenant, rendering unto her one-third of all the crops raised and produced thereon by him. On said 10th day of June, 1890, by a written contract, she leased all of said land (being the eighty-five acres) devised to her for life, to the appellant, John W. Wilson, for the term of one year, with the privilege of holding it longer, or so long as she might live." It is further averred that "The plaintiffs, relying upon the statement of said Elizabeth, that she took and held said land and said property under said will, and that the same was her own until her death, and upon her conduct and acts herein set out as evidencing her wish, intent and purpose, to take and hold said land and property under said will, never demanded or received any part of the rents or profits of said land, and never demanded, nor had anything done with respect thereto, but suffered and permitted her to use and occupy the land as a life tenant; that by her speech, acts, and conduct, as herein described, said Elizabeth Wilson, prior to September 26, 1890, had fully elected to take and hold said lands under said will, but they say that on said day, disregarding her said election and the plaintiff's rights by reason thereof, she executed a deed, by which she undertook to convey to the defendant, John W. Wilson, the share and interest in all of said lands which would have passed to her under the laws of this State, had she not made her election to take under said will." It is alleged that the deed in controversy was recorded on September 26, 1890, and that the appellant, John W. Wilson, by virtue of said deed, is claiming and pre-

tending to be the owner of an undivided one-third of said lands, and that this deed, with his claim thereunder, is a cloud upon the plaintiff's interest in and to the said lands, and renders it impossible to sell the same, as provided by the will. It further appears, by the complaint, that Mrs. Wilson, the widow, was appointed as the executrix under the will, but never qualified as such, and that there has been no administration of the estate thereunder; that all the claims against the estate of said Abijah Wilson have been paid, and that said Elizabeth died intestate December 20, 1893.

The evident theory of the complaint, as outlined by its alleged facts, is that the widow, Mrs. Wilson had by implication elected to take and accept the life-estate in the lands bequeathed to her by her husband, and was thereafter estopped from conveying any interest in fee under the law, as she had pretended to do by her deed to the appellant. An answer and cross-complaint were filed by the appellant, and upon request a special finding of facts was made by the court, with a statement of its conclusions of law thereon. There are several errors assigned, and thereunder the appellants complain and say that the complaint is not sufficient, and contend that the finding of the court is not supported by the evidence, and that the conclusions of law are not warranted by the special finding. As to a part of the material facts alleged in the complaint there is no controversy between the parties. Appellant's principal contentions are that the facts as alleged in the complaint, and as they appear from the evidence in the record, do not establish the ultimate issuable fact that Mrs. Wilson had, prior to the execution of the deed to appellant, elected to accept the life-estate in the lands devised to her by the will.

We have carefully read and considered the evidence,

and the following is believed to be at least a correct summary of it having a bearing upon the question involved:   Abijah and Elizabeth Wilson were husband and wife, and the father and mother of the appellant and appellees, excepting those who are their grandchildren.   He died in October, 1880, in Marshall county, Indiana, the owner in fee of the eighty-five acres of real estate situated in said county, being the same described in the complaint.   He left surviving him his said wife, and the appellant and appellees, his children.   The last will and testament of Abijah Wilson, executed in 1879, and probated after his death, on December 16, 1880, and recorded in the office of the clerk of the Marshall Circuit Court, in part is as follows:

"Know all men, etc., I, Abijah Wilson, of the county of Marshall, State of Indiana, make this my last will and testament:  First, I bequeath to my beloved wife, Elizabeth Wilson, all my property, both real and personal, together with all the proceeds, during her natural life time, after paying all my just indebtedness.  *  *  *  *  At the death of my wife, Elizabeth, I desire my property, both real and personal, disposed of to the best advantage (or so much thereof as may be left) and the proceeds thereof divided among my heirs, as hereinafter described," etc.   Here follow directions as to an equal distribution among his children, naming them, subject to a deduction of certain notes which he held against some of his said children.   There is evidence showing that Mrs. Wilson was present when the will was executed by her husband—passing in and out of the room in which it was being prepared, engaged in looking for and bringing certain notes that were mentioned and identified in the will.

At the time of the execution it appears that the will was also discussed in her presence.   After the death

of her husband, and the probate of his will, she seems
to have exercised complete control over the entire
tract of land, occupied it and used it as her own, and
rented it to her son George Wilson from year to year
for quite a period of time, he rendering unto her as
rent one-third of all the products raised thereon. She
paid the taxes, and made some improvements on the
farm; and repeatedly, during this period, declared to
her friends and acquaintances that according to the
will of her husband, the land was to be her own as
long as she lived. That she was to live on the farm
during her life, and when she died it was to be divided
among the children. On one occasion, when acknowl-
edging the execution of some instrument before an
officer who made some inquiry in regard to her title to
the land she said that it belonged to her as long as she
lived. In the summer of 1884, in referring to the will,
she stated to another party, in substance, that it gave
to her the place as long as she lived; that she had the
right to take what the will gave her or what the law
gave her, but that her husband's will was her will. At
another time she said to one of her friends, a Mrs.
Warrens, that she had the "place" as long as she lived,
and then it was to go to his (her husband's) heirs. She
frequently stated to this witness that it was her hus-
band's wish that she remain upon the farm, and that
she wished to do so. Some time in 1889 it appears
that she desired that George Wilson, one of the ap-
pellees, who was her tenant for some time, as hereto-
fore stated, should deliver the possession of the farm
to her, and she signed and caused a written notice to
that effect to be served upon him, with which demand
he seems to have complied. On January 10, 1890, by a
written contract entered into between her and the ap-
pellant, John W. Wilson, she leased the whole of said
farm to him. This lease is in part as follows: "Article

Wilson *et ux. v.* Wilson *et al.*

of agreement entered into this 10th day of January, 1890, between Elizabeth Wilson (wife of Abijah Wilson, deceased), of the first part, and John Wilson (her son), of the second part. The party of the first part this day rents, or leases, her farm on which she now lives, in Union township, Marshall county, State of Indiana, consisting of eighty-five (85) acres, for the term of one year, with the privilege of longer, or so long as she may live,"etc. Here follow certain conditions and stipulations as to the payment of rent and the use of the farm by the lessee. Some eight months after leasing the land to John W., and apparently at his instance, she took legal advice as to her rights therein, and on September 26, 1890, she executed to him a warranty deed, whereby she purported to convey to him a fee interest in and to the land in dispute. This deed in part reads as follows: "This Indenture Witnesseth, that Elizabeth Wilson, etc., widow of Abijah Wilson, deceased, conveys and warrants to John W. Wilson all of her right, title, interest, and estate whatsoever, which she took and inherited under the law, or otherwise owns, as widow of said Abijah Wilson, deceased, in and to the following real estate." Here is given a description of the realty in controversy. Counsel for appellants earnestly insist that the execution of this deed is the first affirmative act of Mrs. Wilson subsequent to the death of her husband, which indicated her intention to take under the law, and not under the will.

Section 2505, R. S. 1881, in force at the time of the probate of the will, provides: "If lands be devised to a woman, etc., by the will of her late husband, in lieu of her right to lands of her husband, she shall make her election whether she will take the lands so devised or the provisions so made, or whether she will retain the right to one-third of the land of her late

husband; but she shall not be entitled to both, unless it plainly appear by the will to have been the intention of the testator that she should have such lands, etc., thus devised or bequeathed in addition to her right in the lands of her husband." Under this section the presumption is against a double provision being intended by the husband for his surviving widow. It is clear, we think, that the devise in the will of Abijah Wilson to his wife was intended by him to be in lieu of her rights as his widow under the law to his real estate, therefore she was required by this section of the statute to elect whether she would take under the will. *Wilson* v. *Moore*, 86 Ind. 244, and cases cited.

Prior to the amendment of this section by the act of 1885—see Burns' R. S. 1894, section 2666—if the widow of the deceased testator for whom testamentary provision had been made, remained silent she was presumed to hold under the law, and not under the will. Now, however, since the change in the law by the legislature in 1885, she is not required to elect as formerly to take under the will, but in effect she is required within the time mentioned and in the manner provided to renounce the provisions therein made for her benefit, or her rights will be controlled by the will. *Burden* v. *Burden*, 141 Ind. 471, and cases there cited.

The act amending this section, by its express terms limits the time in which the election is to be made to one year after the probate of the will, and is only applicable to wills probated after it went into effect. Under section 2505, *supra*, as it existed at the time of the probate of Abijah Wilson's will, the widow might expressly elect to take under her husband's will, or her election to do so might be by implication, inferred from her acts and conduct. An eminent author states

the rule as follows: "An election may be either express or implied. An express election is made by some single unequivocal act of the party, accompanied by language showing his intention to elect, and the fact of his electing in a positive, unmistakable manner,— as, for example, by the execution of a written instrument declaring the election. As the electing becomes fixed by such a definite act, and at such precise time, no question concerning it can arise." Pomeroy's Equity, Vol. 1, section 514; Am. and Eng. Ency. of Law, Vol. 6, p. 254.

Again it is said: "An election may be also implied— that is, inferred—from the conduct of the party, his acts, omissions, modes of dealing with either property, acceptance of rents and profits, and the like. Courts of equity have never laid down any rule determining for all cases what conduct shall amount to an implied election, but each case must depend in a great measure upon its own circumstances. * * * * A recital in a deed may amount to an election or be evidence of an election. * * * Where a widow is required to elect between a testamentary provision in her favor and her dower, an unequivocal act of dealing with the property given by the will as her own, or the exercise of any unmistakable ownership over it, if done with knowledge of her right to elect, and not through a clear mistake as to the condition and value of the property, will be deemed an election by her to take under the will and to reject her dower." Id., section 515.

Where an election is once made by the party bound to elect, either expressly or inferred from his conduct, it binds, not only himself, but also those parties who claim under him, his representatives and heirs. Id. Section 516; Am. and Eng. Ency. of Law, *supra.*

A person who has an election between several in-

consistent courses of action will be confined to the one which he first adopts. Any decisive act of such person done with a knowledge of his rights and of the fact, determines his election and (in the absence of fraud) works an estoppel. It is an old rule of equity, that where one has taken a beneficial interest under a will, he will thereby be held to have confirmed and ratified every other part of the will, and he will not be permitted to set up any right or claim of his own, however legal and well founded it may otherwise have been, which would defeat, or in any way prevent the full operation of the will. Bigelow Estoppel, 578; *Lee* v. *Templeton, Gdn.*, 73 Ind. 315, 324.

Applying the doctrine as stated and laid down by the authorities to which we have just referred, what must be a reasonable conclusion from the acts of Elizabeth Wilson—subsequent to the probate of the will in controversy. It is evident, we think, that she knew of the testamentary provisions made for her by her husband. She was present at the time of its execution, and heard the will discussed by the testator and draftsman. Shortly after the death of her husband she seems to have recognized her right to use and enjoy the entire estate by leasing the farm to her son, George Wilson, from whom she received and accepted, from year to year, one-third of all the products thereof. We have her repeated declarations that the land was her own as long as she lived, and that she was to reside thereon during life, and at her death it was to be divided among the children of her deceased husband. That this was the will of the latter, and that his will was her will. For a period of nearly ten years after the probate she asserted an ownership to the whole farm and a right to the use and control thereof, kept up improvements and paid the taxes, and then, after terminating by a notice to quit the relation

of landlord and tenant which appears to have existed between her and her son George, she executes a written lease to appellant, wherein she declares that she rents and leases "her farm on which she now lives, etc., consisting of eighty-five acres, for one year, with the privilege of longer, or so long as she may live." Considering these acts and conduct of Mrs. Wilson, especially that of executing the written lease, which embraced and laid claim to the entire farm during her life, and we have a clear manifestation that she was exercising her rights under the will, and had elected to accept the provisions therein made for her. The execution of the latter instrument was an affirmative, positive and unequivocal act upon her part, and, together with all her other acts during the long period preceding it, is incompatible, inconsistent and hostile to the theory and contention of appellant that never, prior to the execution of the deed of conveyance to him, had she indicated her choice to accept the testamentary provisions made for her benefit.

In *Barkley* v. *Mahon*, 95 Ind. 101, this court held that a widow to whom a life estate in land had been devised by her late husband, manifested her intention to take under the will by claiming such life estate as exempt from execution.

Appellees, who, as we have seen, are the children and heirs of the testator, and to whom he had devised the estate after the termination of their mother's life tenancy, seem to have relied upon her acts and conduct as indicating an election upon her part to take under the will, at least it does not appear that they ever, after the probate of the will and prior to her death, disputed her right to have, use and enjoy, as she did, the lands in question.

Having elected to take under the will prior to the execution of the deed to the appellant, as we are con-

strained to hold she did, she was bound thereby, and estopped from exercising any right or setting up any claim or title to the real estate under the law as the widow of Abijah Wilson, and by the conveyance in dispute no interest in fee passed to the appellant.

The complaint was sufficient and the conclusions of law authorized by the finding, and the finding is supported by the evidence. After insisting that in executing the deed to appellant Mrs. Wilson was exercising her right, under the law, to convey to him, his counsel seem to espouse a new and different theory, and contend that under the will she took a life estate in the lands with power of alienation in fee of all or a part thereof, consequently, they mildly contend that the deed served as a valid conveyance in fee to the appellant. We need not decide whether the clause in the will reading "or so much thereof as may be left" was intended to empower the widow to sell and convey the land in fee, as it does not appear that she attempted to exercise any right to convey under the will. She distinctly declared, and stated in the deed, that the interest which she was conveying to appellant was that which she took and inherited under the law as the widow of Abijah Wilson.

Appellant complains of the action of the court in excluding certain declarations of Mrs. Wilson, made prior to the execution of the deed in the absence of appellees and while she was in possession of the land to the effect that she had never seen the will nor heard it read, and that all she knew about it was what her son George Wilson had told her. It is sufficient to say that under the issues in this case these were clearly incompetent.

Finding no error in the record, the judgment is affirmed.