BARTLEY *v.* CHICAGO AND EASTERN ILLINOIS RAILWAY COMPANY ET AL.

[No. 27,308. Filed December 22, 1939. Rehearing denied February 27, 1940.]

*John H. Jennings,* of Evansville, and *Morton C. Embree,* of Princeton, for appellant.

*T. Morton McDonald, Douglas H. McDonald,* both of Princeton, *Frank S. Hatfield,* and *Joe S. Hatfield,* both of Evansville, for appellees.

SWAIM, J.—This is an appeal from a judgment in favor of the appellees, Chicago and Eastern Illinois Railway Company and Leslie Allyn, in an action for personal injuries to the appellant, George Bartley, resulting from a collision between a truck being driven by the appellant and a train of the appellee Railway Company at a street crossing in the city of Evansville, Indiana.

The plaintiff below, appellant here, first filed his complaint against the Chicago and Eastern Illinois Railway Company and Leslie Allyn and thereafter amended said complaint by making Charles M. Thomson, as Trustee of the Estate of Chicago and Eastern Illinois Railway Company, an additional party defendant. The accident on which the complaint was based occurred prior to the appointment of the said trustee. The said Charles M. Thomson, as such trustee, filed a motion to stay all proceedings in said cause and the court sustained said motion in part, ordering the proceedings permanently stayed as to said trustee.

The other two defendants to said complaint filed answers in general denial thereto. On the issues so joined the cause was submitted to a jury, and at the conclusion of the plaintiff's evidence the two remaining defendants moved the court to return a verdict in their favor. This motion was sustained by the court and the jury, pursuant to the instruction of the court, returned a verdict for said two defendants and judgment was entered thereon.

The plaintiff's motion for a new trial was overruled and he then perfected his appeal, joining as an appellee Charles M. Thomson, as Trustee of the Estate of Chicago and Eastern Illinois Railway Company. No question is presented in this appeal on the order of the

trial court staying the proceedings in said cause as to said trustee.

Said Charles M. Thomson, as such trustee, filed a motion herein to dismiss this appeal as to him on the ground that he was not a party to the judgment appealed from and has no interest therein. It is true that said trustee was not a party to the judgment appealed from, but in our opinion he did have a sufficient interest in the judgment to justify the appellant in naming him a party appellee herein. While the proceedings had been stayed permanently as to said trustee the appellant was permitted to proceed with the cause against the railway company, whose assets, business and affairs were in the hands of the trustee in bankruptcy. If appellant should recover a judgment in this cause against the railway company his next step would probably be an attempt to collect the judgment from the property of the company now in the hands of the trustee. Without passing on the question of whether, by an appropriate proceeding in the court which appointed the said trustee, the appellant could collect a judgment against the company from the assets in the hands of the trustee, the fact remains that the interest of the trustee in the judgment was adverse to the appellant and the said trustee is, therefore, interested in maintaining the judgment rendered in favor of the company. If·such judgment is maintained there necessarily can be no claim thereon filed in the bankruptcy proceeding against the assets in the hands of the trustee.

It has been held that persons may be made parties to an appeal when they were parties to the record and interested in maintaining the judgment even though they were not actually parties to the judgment. *Trippeer* v. *Clifton* (1912), 178 Ind. 198, 97 N. E. 791; *In re*

*Northwestern Indiana Tel. Co.* (1930), 201 Ind. 667, 677, 171 N. E. 65. Here the action as against the trustee was not dismissed although the proceedings against him were stayed. He was still a party to the record when the judgment was entered against the appellant. In maintaining this judgment the trustee has such an interest as to justify making him a party appellee to this appeal.

The motion to dismiss this appeal as to such trustee is, therefore, overruled.

The principal question presented by this appeal is based on the alleged error of the trial court in giving to the jury the peremptory instruction to find for the defendants and against the plaintiff.

The accident out of which this action arose occurred about 2:00 o'clock P. M. on June 29, 1933, at the intersection of Heidelbach Avenue and Division Street, two public highways within the corporate limits of the city of Evansville, Indiana. Heidelbach Avenue extends in a northerly and southerly direction and Division Street intersects Heidelbach Avenue at a right angle, said Division Street extending approximately east and west. The tracks of the appellee Railway Company extend east and west along the approximate center of Division Street. At the time of the accident the appellant was driving a model T Ford truck south on and along said Heidelbach Avenue. When said truck reached Division Street and the tracks of the appellee company it was struck by appellee Railway Company's engine, which was being operated backwards towards the east by appellee Allyn and was pulling a string of box cars.

The appellant in his amended complaint alleged negligence on the part of the appellee Railway Company, (1) in failing and neglecting to so construct and maintain said railroad upon and across said Heidelbach

Avenue and in failing to maintain the surface of the street between its tracks, in such manner as not to interfere with the free use of the said highway, and to afford security for life and property, (2) by failing to maintain a flagman or automatic warning bells or signals to warn travelers on said highway of the approach of a train, (3) in backing and operating said engine and train of cars across said Heidelbach Avenue at a dangerous and unlawful rate of speed in violation of a certain ordinance of the said city of Evansville, (4) in failing to give any warning by whistle, bell, signal or otherwise of the approach of said engine and cut of cars, (5) in failing to have a person on the front of said cut of cars as it approached Heidelbach Avenue as a lookout for traffic on Heidelbach Avenue, and (6) in failing to stop said engine and train of cars immediately before entering Heidelbach Avenue contrary to another ordinance of the city of Evansville.

No evidence was introduced by the appellees. The evidence introduced by the appellant was conflicting on some of the important facts sought to be established. There was evidence tending to show that the engine and cut of box cars, as they approached Heidelbach Avenue and entered the intersection, were traveling at a speed of some fifteen to twenty miles per hour in violation of the city ordinance regulating the speed of trains within the city of Evansville, which ordinance was as follows:

"SECTION 1. Be it ordained by the Common Council of the city of Evansville that it shall be unlawful to construct any railway or railroad track or switch or to lay down any cross tie or rail on any street, alley or other public place within the city without first securing the right so to do according to the provisions of the charter of said city and it shall be unlawful to run any passenger train on any track through the city of Evansville

at a rate of speed exceeding twelve miles per hour or any freight trains at a rate of speed exceeding eight miles per hour and to run any engine or car or to go at a rate of speed exceeding the maximum rate fixed in this section."

Some evidence also tended to show that no warning of the approach of said train, either by bells or whistle, was given for the traffic of Heidelbach Avenue. The evidence was undisputed that the company maintained no watchman or flagman at this crossing and that it maintained at said crossing no warning bells or signals of any kind for the purpose of warning the travelers on Heidelbach Avenue of the approach of a train.

The evidence was also undisputed that the appellee company provided no person on the back of said engine, to watch for traffic and to give warning of the approach of said engine, as it backed towards and into Heidelbach Avenue. It was further shown that on the right-hand side of Division Street, as you approached Heidelbach Avenue, both from the east and from the west, there were signs on which was printed "THRU STREET—STOP."

The engine and the cut of cars in question did not stop before entering Heidelbach Avenue and the evidence tended to show that there was not even a slackening of their speed as they approached the intersection.

There was evidence presented that showed that Heidelbach Avenue was paved with asphalt except between the tracks of said appellee Railway Company and for a distance of about a foot on each side of said tracks. Between the tracks of the appellee Railway Company on Heidelbach Avenue the street was rough and contained holes and ruts of varying widths and depths. Just inside said tracks there were ruts of sufficient size and depth to catch and hold the wheels

of the truck being driven by appellant as he attempted to turn it to the left to avoid a collision.

One witness testified that the truck being driven by appellant had good brakes; that a test made out on the road showed that the truck, when empty and going fifteen miles per hour, could be stopped in twenty feet after the brakes were applied. There was no direct evidence on the distance it would require to stop said truck when, as here, it was loaded and traveling down grade on an asphalt street at a speed of fifteen miles per hour.

The evidence showed that as the appellant drove his truck south on Heidelbach Avenue approaching Division Street his vision to the right was obstructed by a large terminal warehouse located at the northwest corner of the intersection of these two streets. Said warehouse was forty to fifty feet in height and extended west an entire block along the north line of Division Street.

The appellant testified that as he approached the crossing he was listening for trains, but he did not hear the train nor any signals of any kind to warn him of its approach; that he was driving about fifteen miles an hour and as soon as he passed the corner of the warehouse and was in a position where he could see to the west he looked and saw the train coming; that at this time he was about thirty feet from the track; that when he saw the train he turned the truck to the left, intending to go down Division Street to keep the train from hitting him; that in making the turn to the left his "truck got caught" in the intersection between the tracks and stopped and he could not get it to go any further; that he did not attempt to stop his truck by using the brakes because the truck

was loaded and he "could not make too dead a stop - - - might have bumped into the train or somebody might have bumped into me and bumped me into the train."

There was evidence tending to show that an automobile parked diagonally in Division Street on the northeast corner of the intersection prevented his making a sharper turn to the left into Division Street so as to avoid getting on the tracks of the appellee Railway Company. When the said appellee's engine struck the appellant's truck the truck was entirely stopped and the appellant was trying to get out of it.

At the time of the accident the appellant was twenty-six years of age and was engaged in the grocery business. He was "familiar with" the intersection of Heidelbach Avenue and Division Street having driven over it on the average of twice a day.

On the above facts so shown by the evidence can it be said that the appellant was guilty of contributory negligence as a matter of law and that the trial court was, therefore, justified in directing the jury to return a verdict for the defendants?

The appellant was driving downgrade on a preferential street. While the ordinance showing the street to be a preferential street was not in evidence it was shown that on each side of the street there were signs bearing the words "THRU STREET—STOP." This would constitute some evidence from which a jury might infer that it was a preferential street, one factor which the jury might properly consider in determining whether appellant was using due care for his own safety.

Appellant testified that as he approached the crossing he was listening but heard no signals of an approaching

train. Some witnesses who were in a position where they should have heard a signal if it had been given, testified that they heard no such signal. The appellees contend that the testimony of these witnesses does not contradict the testimony of other witnesses who said that they heard signals by bell and whistle, and that, therefore, the court was justified in holding that signals were given. While negative evidence may not have the same probative value as positive evidence it is usually the only method of proving the failure of a railway company to give signals and, in such a case as this, is evidence which the jury may properly weigh and consider, together with positive evidence, if any, to the contrary, in determining whether such signals were given. *Muncie Pulp Co.* v. *Keesling* (1906), 166 Ind. 479, 76 N. E. 1002.

As he approached the tracks of the appellee Railway Company the appellant had a right to assume that any train of appellee Railway Company approaching Heidelbach Avenue would give the required statutory signals by bell and whistle, warning him and other travelers on Heidelbach Avenue of the approach of such train, § 55-1243, Burns' 1933, § 14557, Baldwins' 1934. The failure of the Railway Company to give such signals not only is negligence *per se* on the part of the Railway Company, but is a fact which the jury may properly consider, together with other pertinent facts, in determining the question of whether appellant was guilty of contributory negligence as he approached said crossing and prior to the time he saw or could have seen the approaching train. *Pittsburgh, C. C. and St. L. Ry.* v. *Terrell* (1911), 177 Ind. 447, 95 N. E. 1109; *Van Osdol* v. *Henderson* (1939), ante p. 240, 22 N. E. (2d) 812, 818. Under all of the facts of this case it was a question of fact for the jury as to whether

appellant was guilty of contributory negligence in his manner of approaching said crossing.

As appellant came to the corner of the warehouse where he could see to the west he saw the train approaching. He testified that he was then about thirty feet from the tracks. Other testimony fixed the distance between the tracks and the warehouse, which shut off his vision to the west, as twenty to thirty feet. The appellees insist that the evidence shows that the appellant could have stopped his truck after he saw the train approaching and that his failure to do so constituted contributory negligence as a matter of law. The truck in going fifteen miles per hour was traveling twenty-two feet per second. After passing the warehouse building it would take some time for the appellant to see the train, grasp the situation, and realize that the train was traveling far in excess of the maximum rate of speed fixed by the ordinance. It would have taken some time for him to apply the brakes. For all of this he had only a little more than a second. He testified that he was afraid to try to stop suddenly for fear he would bump into the train or that someone behind him would hit him and bump him into the train. He thought he could turn to the left down Division Street and so avoid being struck by the train. This he attempted to do. It seems that he would have succeeded and the collision would have been averted except for the fact that the front wheel of his truck caught in a rut between the tracks of the Railway Company and his truck became stalled. The appellees insist that the testimony shows that the appellant was familiar with the condition of the surface of the street between the tracks. This contention is based on the testimony of the appellant that he was familiar with and crossed this intersection on the average of twice a day. It

does not necessarily follow, however, that one driving straight across the intersection would realize that a rut along the inside of and paralleling the tracks was of sufficient depth and width to catch a truck wheel and hold it so firmly as to stall the truck as the appellant was trying to turn the truck to the left in order to avoid a collision.

The evidence in this case tends to show that the appellee Railway Company was guilty of negligence *per se* in failing to give warning signals of the approach of the train, in operating the train at a speed in violation of the city ordinance and in failing to properly maintain the crossing and the surface of the street between its tracks. This, of course, does not excuse the appellant from the duty of using due care for his own safety, but these facts may have an important bearing on the question of whether appellant was using such due care. Whether a driver has used such due care is ordinarily a question for the jury. As said by this court in the case of *Central Indiana R. Co.* v. *Wishard* (1916), 186 Ind. 262, 268, 114 N. E. 970,

"The courts of this State have been very cautious in stating that any special acts or precautions were required in the exercise of ordinary care, generally leaving that question to the jury. This court has declared as a matter of law that ordinary care requires a person about to cross a railroad track to use his senses of sight and hearing, but it has never said that he must stop or that he must look or listen at any particular place, except that he should exercise reasonable care to look or listen at some place where such precautions would enable him by the exercise of such care to see or hear the approach of a train. *Pittsburgh, etc. R. Co.* v. *Dove* (1915), 184 Ind. 447, 111 N. E. 609, and cases there cited.

"Appellant asks us to go further in this case and to declare as a matter of law that other specific

precautions on the part of appellee were necessary in the exercise of ordinary care, as, for instance, to stop his motor, or to stand up and look, or to get out and go forward and look up and down the track. It is possible that the judge who presided at the trial may have thought that ordinary care under the circumstances shown required the use of some or all of such precautions or that some of the members of this court may think so; but these are not questions of law for the decision of courts. It has been thought wise to submit such question to the twelve laymen composing the jury to be decided as questions of fact under proper instructions from the court, in order that they may bring to bear their varied experiences and knowledge of men, in determining what a reasonably prudent man would ordinarily do under the circumstances disclosed by the evidence. This court cannot say that there is no room for reasonable minds to differ on any of these questions; and, therefore, cannot hold as a matter of law that any precaution under consideration should or should not have been observed in the exercise of due care."

So in this case, on the facts which the jury might properly have found from the evidence, it cannot be said that reasonable minds might not have differed on the question of whether the exercise of due care on the part of the appellant required him to attempt to avoid the collision by attempting to stop his truck rather than by attempting to turn the truck to the left as he did.

It follows that if the question of contributory negligence on the part of the appellant had been submitted to the jury and the jury had found for the appellant we could not say, as a matter of law, that the appellant was guilty of contributory negligence and that the verdict of the jury should be set aside. It was, therefore, error for the court to take the question of contributory negligence from the jury by giving the peremptory instruction.

The only other question raised by appellant which we need to consider relates to the attempted introduction by the appellant of Traffic Ordinance No. 44 of the city of Evansville. In the trial of this case August W. Ellerbush testified that he was the City Clerk of the city of Evansville; that he held such position on July 23, 1930; that he had with him the book of the record of said city containing an ordinance purporting to have been passed July 17, 1930, which ordinance related to making "through" streets and the Hoover Code; that he also had with him such ordinance in pamphlet form; and that he had had something to do with publishing such pamphlet. Appellant offered "to introduce and read in evidence Section No. 44 of the Traffic Ordinance which purported to have been passed by the Common Council of the city of Evansville, called Ordinance No. 1454, printed in pamphlet form showing on the cover that it was published on the 23d. day of July, 1930, under the order of the Common Council of the city of Evansville, Indiana." Said ordinance provided that certain streets in said city, including said Heidelbach Avenue should be "preferential" streets and that "every vehicle, street car or other conveyance" should be brought to a complete stop before crossing such streets. The introduction of said ordinance was objected to for the reason "that there is no evidence at this time showing that it was ever passed as required by law or published in any manner whatever and for the further reason that there is no evidence showing any official authorization by the common council of the publication of the so-called pamphlet." This objection was sustained by the court.

The appellant insists that the court erred in sustaining said objection and bases his contention on § 52 of

the Cities and Towns Act of 1905, page 219, 245, § 48-1406, Burns' 1933, § 11431, Baldwin's 1934. This section of said act provides that the City Council shall have the power to enact ordinances for the government of the city, and prescribes the manner in which such ordinances shall be passed, and the method of their approval or veto by the mayor. It also provides a method in which such ordinances shall be recorded and the manner of the publication of all ordinances which impose a penalty or forfeiture for the violation thereof. Said section then provides as follows:

"That whenever any city shall publish any of its ordinances in book or pamphlet form, such publication shall be of itself sufficient, and such ordinance or ordinances shall be in force in two (2) weeks from the date of publication of such book or pamphlet. Any such publication of the ordinances of a city in book or pamphlet form, if the same shall purport to be printed under the authority of the common council of such city, shall be presumptive evidence, in all courts and places, of the ordinances therein contained and of the date of their passage, and that the same are properly signed, attested, recorded and approved."

The appellant insists that under this particular provision the pamphlet which he attempted to introduce should have been admitted by the court. In 1927 the General Assembly of this State passed the Legal Advertising Act, § 4 of which provides the method for the publication of ordinances but said Act contained no provision for the publication of ordinances in book or pamphlet form and provided for the repeal of all laws in conflict therewith. Acts of 1927, ch. 96, p. 252, § 49-704, Burns' 1933, § 10204, Baldwin's 1934.

The provisions of the Acts of 1905 *supra* on which the appellant relies might have supported his contention

prior to the passage of the 1927 Legal Advertising Act but since the publication of ordinances in book or pamphlet form was not sufficient under the 1927 Act *supra,* and further since said 1905 act provides that such a pamphlet should be presumptive evidence only of the date of the passage of the ordinance and that the same was properly signed, attested, recorded and approved, we are of the opinion that the publication of said ordinance in pamphlet form did not constitute presumptive evidence of the due publication of such ordinance. The particular section of the ordinance sought to be introduced by the appellant did not provide for a penalty. We have no doubt, however, that other sections of the ordinance did provide a penalty for any violation of the provisions contained in the section sought to be introduced, otherwise the provisions of said section requiring traffic to stop at certain through streets would have no effect on the traveling public. This court has held that a penal ordinance cannot be admitted in evidence without proof of publication where its admission was objected to at the time for failure to show publication. *Central Indiana R. Co.* v. *Wishard* (1916), 186 Ind. 262, 276, 114 N. E. 970. We are of the opinion that the court properly excluded the offered ordinance in this case because of the failure of the appellant to show publication.

Because of the error of the trial court in instructing the jury to return a verdict in favor of the appellees and against the appellant the judgment herein is reversed with instructions to the trial court to grant the motion for a new trial.

Note—Reported in 24 N. E. (2d) 405.