**PEARSON v. BALTIMORE & OHIO R. CO.**

No. 10626.

United States Court of Appeals
Seventh Circuit.

Dec. 31, 1952.

Rehearing Denied Jan. 29, 1953.

570

. Cassatt Martz, Indianapolis, Ind., Martz, Beattey & Wallace, Indianapolis, Ind., for defendant, Baltimore & Ohio R. Co.

Thomas M. Scanlon, Indianapolis, Ind., for appellee.

Before DUFFY, LINDLEY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

This is an appeal from a judgment entered on a verdict in favor of the plaintiff, Phyllis H. Pearson, in an action against the defendant, The Baltimore and Ohio Railroad Company, to recover damages for personal injuries resulting from a railroad crossing collision between an automobile driven by the plaintiff and the locomotive of a train operated by the defendant.

The complaint alleged that the collision was caused by the negligence of the defendant in failing to comply with city ordinances relating to the speed of trains, the sounding of a locomotive bell and

the maintenance of crossing signals. The plaintiff's allegations of negligence were denied, and in a second paragraph of answer the defendant filed a counterclaim for damage to rolling stock and equipment, charging that plaintiff negligently drove her automobile into and against the defendant's locomotive.

First at the close of the plaintiff's evidence and again after all the evidence was in, the defendant moved for a directed verdict on the ground that plaintiff was guilty of contributory negligence as a matter of law. The motions were denied by the District Court and the case was submitted to the jury. The jury rendered a general verdict in favor of the plaintiff on her complaint and against the defendant on its counterclaim. The jury also answered special interrogatories. Damages were assessed by the jury in the amount of $13,000. The judgment was thereupon entered from which this appeal is taken.

Considering the undisputed evidence, the jury's answer to the special interrogatories and resolving conflicts in the testimony favorably to the plaintiff, the following facts could have been properly found by the jury:

The accident occurred in the City of Indianapolis, Indiana, on December 9, 1949, between 8:00 and 8:20 A.M. The defendant's single track railroad runs in an easterly and westerly direction through the city and is intersected in the eastern part of the city by a street running generally north and south, known as Arlington Avenue. It was at this intersection that the collision occurred. The defendant's train was traveling east, and the plaintiff's automobile was traveling north on Arlington Avenue.

To the south of the intersection, the street is lined by houses on either side, the house nearest the crossing on the west side extending to within 59 feet of the track. A plat of the location, Defendant's Exhibit H, indicates a house directly across the street on the east side, perhaps somewhat nearer the track. These houses are located a distance of 75 to 78 feet away from the center of the street.

It is apparent, then, that from a point on Arlington Avenue a considerable distance south of the intersection, the east and west track approaches to the crossing are largely obscured from view. Only the space between the two houses located nearest the track and on opposite sides of the street affords one approaching from the south a view of the crossing and portions of the adjacent track extending to the east and to the west. However, the range of vision encompassing the east and west track approaches, of the traveler proceeding north, is progressively expanded as he approaches the crossing. Thus, from a point in the Arlington Avenue pavement 100 feet south of the intersection, an object may be seen on the track 180 feet to the west; at 60 feet south, visibility of the track approach to the west increases to 821 feet.

It is not considered to be material that at the time of the accident here involved, a number of railroad cars were located on a siding immediately south of the track, since the nearest car was 600 feet west of the crossing.

As required by an ordinance of the City of Indianapolis, the intersection was equipped with a signal bell to warn motorists of approaching trains. The signal here was of the wig-wag type, consisting of a bell, a metal disc on an extended arm and a red light in the center of the disc. Such a signal is connected to an electric track circuit, so that when the switch is actuated by an approaching train, the disc swings back and forth, the red light functions and the bell rings.

Other ordinances in effect at the time of the collision prescribed a speed limit of 20 miles per hour on trains operating within the area in which this crossing was located, and required the ringing of a bell on a moving locomotive.

In addition, there was prohibited by ordinance the sounding of a locomotive whistle within the corporate limits of the city, "except as a signal of danger that cannot be given any other way * * *." This ordinance must be considered in connection with a statute of the state of Indiana, Burns' Ind.Stats.Ann. (1933, 1942 Repl.) § 10–3912, which states that a whistle shall be sounded upon the approach by a locomotive to any public highway within the state; subject, however, to ordinances regulating the management of trains within the corporate limits of a city or town.

The plaintiff is a young woman, who at the time of the events here related was 24 years of age, and an experienced driver. She was a resident of Indianapolis, and was employed as a schoolteacher at Carmel and Fishers, Indiana, suburban towns located a short distance outside the city. She was thoroughly familiar with the crossing involved, for it was along the route she regularly traveled in going to and from school, and she had driven an automobile across it at least 40 times within two months prior to the accident.

On the morning of the accident the plaintiff was on her way to school, driving her husband's automobile, a 1949 Ford, purchased new just six weeks previously. The brakes on the car were in good condition and the pavement was dry. As the plaintiff traveled north on Arlington Avenue towards the intersection, she was moving at a speed of 25 to 30 miles per hour. Unknown to her, the defendant's train was traveling towards the crossing from the west, also at a speed of 25 to 30 miles per hour. The locomotive bell was not ringing and the signal at the crossing was not functioning, thus failing to indicate the approach of the train. The wig-wag was not operating, the light in the signal was not illuminated and the bell on the signal was not ringing.

The defendant's engineer, although he saw the plaintiff's car as it neared the crossing and continued to watch it until the moment of the impact, did not at any time sound the locomotive whistle.

The plaintiff, when she was still some distance from the crossing, "could see all the track that was visible between the house on the left side of the road and the house on the right side." She observed that the signal was not functioning. As she approached the crossing, she "con-

tinued to watch the signal up to the point where you could see to the right and to the left beyond the houses," and then "looked to the right and to the left, always depending upon the signal." When she looked down the track to the west, after first looking to the east for "about a second," or "long enough to assure myself that there was not anything coming," she saw the defendant's train. At this point, the plaintiff was 60 feet south of the crossing and the front of the defendant's locomotive was 90 to 150 feet west of the Arlington Avenue pavement line.

Upon seeing the train the plaintiff applied her brakes, turned off the ignition and threw herself down on the front seat of the car. The brakes began to function at a distance of 15 to 18 feet south of the track, as shown by the skid marks on the pavement which extended to within a foot and a half of the south rail. The plaintiff's car, still in the east lane of the pavement, struck the side of defendant's locomotive at the rear part of the right front cylinder. The car was not stopped at any point on Arlington Avenue prior to the moment of impact.

■ Since federal jurisdiction in this case arises by reason of the diversity of citizenship of the parties, the law of Indiana is, of course, controlling. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

■ The defendant apparently does not, as it obviously cannot, seriously deny its own negligence. There is evidence in the record from which the jury properly could have found that the defendant violated a state statute directing the sounding of a locomotive whistle, and violated Indianapolis city ordinances governing the speed of trains, the sounding of locomotive bells and the proper maintenance of crossing signals.

■ A violation of the statutory duties so imposed is, under Indiana law, negligence *per se*, according a right of action to anyone injured by reason of such violation. Bartley v. Chicago & E. I. R. Co., 216 Ind. 512, 522, 24 N.E.2d 405;

New York Central R. Co. v. Pinnell, Adm'x, 112 Ind.App. 116, 126, 40 N.E.2d 988; Chicago, St. Louis & Pittsburg R. Co. v. Fenn, 3 Ind.App. 250, 253, 29 N.E. 790. Of course, the violation of the duty imposed by the statute or ordinance must constitute a proximate cause of the injuries of which the plaintiff complains.

It is the defendant's principal contention that a proximate cause of the plaintiff's injuries was her own contributory negligence; that this is apparent from the facts as related above; and that the District Court, therefore, erred in refusing to direct a verdict for the defendant on the ground that plaintiff was guilty of contributory negligence as a matter of law.

■ In considering the issue thus presented, we are to be mindful of the Indiana rule that, ordinarily, contributory negligence is a question of fact for the jury. This is so, where the facts are such as to be subject to more than one reasonable inference. Dommer v. Pennsylvania R. Co., 7 Cir., 156 F.2d 716, 718; Lake Erie & Western R. Co. v. McFarren, 188 Ind. 113, 117–118, 122 N.E. 330. "It is only where the controlling facts are not in dispute and are susceptible of but one conclusion upon the part of reasonable men, that the question becomes one of law for the court." Baltimore & Ohio R. Co. v. Reyher, 216 Ind. 545, 552, 24 N.E.2d 284, 286.

The defendant bases its argument upon the undisputed fact that the plaintiff did not stop her automobile at any point on Arlington Avenue before entering upon the crossing. The defendant contends that had she stopped, the collision would not have occurred and, therefore, her own negligence contributed to the accident.

■ It apparently is the contention that plaintiff was negligent as a matter of law, both because she failed to exercise reasonable care in not stopping, and also because she violated an Indiana statute, Burns' Ind.Stat.Ann. (1933, 1952 Repl.) § 47–2114, by failing to stop within 50 feet but not less than 10 feet of the crossing, as required therein under certain specified conditions.

It is admitted by the defendant, indeed urged, that the plaintiff was driving at a moderate rate of speed. Aside from the claimed statutory violation, then, it is the defendant's position that either the plaintiff should have stopped her automobile short of the crossing after seeing the train when she was 60 feet away, or that she should have seen the train sooner and thereby have been enabled to stop before reaching the crossing.

We do not agree that the evidence required such findings as a matter of law.

The defendant introduced no evidence tending to show that plaintiff's automobile, traveling 25 to 30 miles per hour, could, in the exercise of reasonable care, have been braked to a stop within 60 feet. We do not venture to say whether it could have been or not, or whether the plaintiff could otherwise have maneuvered her automobile so as to avoid striking the defendant's locomotive. Certainly, the question was a proper one for the consideration of the jury, and the jury could justifiably have found that the plaintiff acted reasonably under the circumstances.

Likewise, whether the plaintiff should have sooner discovered the train is a question upon which reasonable minds could differ. There was evidence from which the jury could have found that she looked as soon as it was possible to see down the track beyond the houses on either side of the street. If the plaintiff had looked first to the west, instead of to the east, she might have seen the locomotive in time to avoid the accident. However, she was not required to look first in a particular direction. See Pennsylvania R. R. Co. v. Hemmer, 206 Ind. 311, 338–340, 186 N.E. 285, 189 N.E. 137.

 We attach considerable importance to the fact that here the crossing signal, with which the plaintiff was familiar, was not functioning as she traveled towards the intersection. Because of the element of surprise, this could properly be considered in determining whether the plaintiff acted reasonably once she became aware of her peril. However, it has particular significance with reference to the question of whether she should have sooner discovered the approaching train. For under the Indiana law, the plaintiff had the right to presume that if a train were approaching, the signal would be functioning. Lake Erie & Western R. Co. v. McFarren, 188 Ind. 113, 118–119, 122 N.E. 330; Pennsylvania R. Co. v. Boyd, 98 Ind.App. 439, 446, 185 N.E. 160.

Although, under such circumstances, the plaintiff was not relieved from the duty of exercising reasonable care for her own safety, the amount of care necessary to meet the standard of reasonableness was thereby diminished. Grand Rapids & Indiana R. Co. v. Cox, 8 Ind.App. 29, 34–35, 35 N.E. 183. The fact that the signal was not operating indicated to the plaintiff that no train was near, and this was relevant to the question of whether she was guilty of contributory negligence in not sooner discovering the approach of defendant's train. That the plaintiff may justifiably have relaxed her vigilance is illustrated by the language of the Supreme Court of Indiana in Bartley v. Chicago & E. I. R. Co., 216 Ind. 512, at page 524, 24 N.E.2d 405, at page 410:

"The evidence in this case tends to show that the appellee Railway Company was guilty of negligence *per se* in failing to give warning signals of the approach of the train, in operating the train at a speed in violation of the city ordinance and in failing to properly maintain the crossing and the surface of the street between its tracks. This, of course, does not excuse the appellant from the duty of using due care for his own safety, *but these facts may have an important bearing on the question of whether appellant was using such due care.*" (Our emphasis.)

Many Indiana cases have announced and approved this principle, that the defendant's prior negligence may be a factor in determining whether the plaintiff has used due care. See also Pennsylvania Co. v. Stegemeier, 118 Ind. 305, 309–312, 20 N.E. 843; Elgin, Joliet & Eastern R. Co. v. Scherer, 121 Ind.App. 477, 483, 98 N.E.2d 369.

Furthermore, it is held in Indiana that under such circumstances, the question as to plaintiff's contributory negligence is a question of fact for the jury. As stated in Indianapolis Union R. Co. v. Neubacher, 16 Ind.App. 21, at page 38, 43 N.E. 576, at page 581, 44 N.E. 669:

"The fact that the safety gate was open was an indication that no train was approaching. * * * When the facts and circumstances are such as to have a tendency to mislead one about to pass such a crossing, the law will not hold him to that strict accountability that it would under ordinary conditions. In all such cases the question of contributory negligence is for the jury."

To the same effect see Bartley v. Chicago & E. I. R. Co., 216 Ind. 512, 522, 524, 24 N.E.2d 405; New York, Chicago & St. Louis R. Co. v. First Trust & Savings Bank, 198 Ind. 376, 386–387, 153 N.E. 761; Lake Erie & Western R. Co. v. McFarren, 188 Ind. 113, 118–119, 122 N.E. 330.

As we have stated, the defendant complains also that plaintiff was guilty of contributory negligence as a matter of law because she failed to stop before entering upon the crossing as required by Indiana statute. The statute claimed to have been violated is Burns' Ind.Stat.Ann. (1933, 1952 Repl.) § 47–2114, which provides:

"Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty (50) feet but not less than ten (10) feet from the nearest track of such railroad and shall not proceed until he can do so safely, when:

"(a) A clearly visible electric or mechanical signal device gives warning of the immediate approach of a train.

"(b) A crossing gate is lowered or when a human flagman gives or continues to give a signal of the approach or passage of a train.

"(c) A railroad train, as defined in this act, approaching within approximately one thousand five hundred (1,500) feet of a highway crossing emits a signal audible for such distance and such train, by reason of its speed or nearness to such crossing is an immediate hazard.

"(d) An approaching train is plainly visible and is in hazardous proximity to such crossing."

We are concerned here with sub-section (d) of the statute. Apparently it is the defendant's contention that under this provision the plaintiff here had an absolute duty to stop, and her failure to do so constituted a violation of the statute, irrespective of whether she acted in the exercise of reasonable care. Accordingly, the defendant assigns as an error of law committed by the District Court the giving to the jury of the court's Instruction No. 32. In that instruction the court recited this statute, as quoted above. The court then stated to the jury, with respect to sub-section (d), that:

"If you find from all the evidence in this case that at the time and place in question Defendant's train was plainly visible to Plaintiff and was in hazardous proximity to such crossing, then I instruct you that she likewise had a duty to stop. In determining whether or not the Defendant's train was plainly visible, however, you must determine whether it was plainly visible to a person exercising reasonable care under all the facts and circumstances, as shown by the evidence, including whether or not the Defendant's automatic signal was in operation or not."

The defendant contends that by instructing the jury that whether the train was plainly visible must be determined according to the standard of reasonable care, the District Court has improperly qualified the meaning of the Indiana statute.

We do not agree that this instruction was erroneous. Neither the Supreme Court nor the Appellate Court of Indiana ap-

pears to have expressly interpreted the statute in a situation exactly similar to this case. But, as we have shown, the Indiana law is very clear that under circumstances such as we have here, the prior negligence of the railroad company may be an important factor in determining whether a plaintiff has used due care. That the District Court was cognizant of this is shown by the language of the instruction quoted above. To read the statute according to the strict interpretation urged by the defendant would, under the circumstances of this case, be to completely ignore this considerable body of Indiana law.

In Dommer v. Pennsylvania R. Co., 7 Cir., 156 F.2d 716, 719, this court approved an instruction, based on a portion of this same statute, which similarly incorporated the standard of reasonable care. In that case, the instruction related to the provision that after stopping, the driver of a vehicle shall "not proceed until he can do so safely. * * *" As against the contention that under the statute a traveler has a mandatory duty not to proceed until he can do so safely, irrespective of whether a person exercising reasonable care might believe he could so proceed, Judge Major, speaking for the court, stated, 156 F.2d at page 719:

"We do not believe the defendant's contention in this respect is realistic. If followed to a logical conclusion, it would mean that the very occurrence of a collision, under the circumstances as shown by this record, would constitute contributory negligence as a matter of law."

We think this reasoning is equally applicable to the case at bar, where the objected to portion of the instruction states in effect that "plainly visible" means plainly visible to a person exercising reasonable care under the circumstances.

Further support for this conclusion is found in the case of Heiny v. Pennsylvania R. Co., 221 Ind. 367, 372–373, 47 N.E.2d 145, which was relied upon by this court in the Dommer case. There, the Supreme Court of Indiana construed a similar statute, Burns' Ind.Stat.Ann. (1933, 1942 Repl.) § 10–1909, which provides that the operator of a vehicle transporting explosives "shall ascertain definitely that no train, car or engine is approaching * * * in such close proximity * * * as to create a hazard or danger of a collision" before entering upon a crossing. This language seems considerably more stringent than that which we are here considering. Therefore, we think it significant that the Indiana Supreme Court held, so far as tort liability is concerned, that there was imposed by that language no more than the duty to exercise ordinary care.

The defendant refers to the language of this court in Moss v. Pennsylvania R. Co., 7 Cir., 146 F.2d 673, regarding the effect of Burns' Ind.Stat.Ann. (1933, 1952 Repl.) § 47–2114, and urges that decision as controlling in this case. It should be noted that this court there expressly declined to base its decision upon a violation of the statute. Moreover, we do not think the opinion expressed there regarding the effect of the statute could have any application to the circumstances in the case at bar. No issue was raised in that case respecting the possible effect on the decedent's conduct of the defendant's prior negligence. Here, we have felt that it was necessary to place much stress upon the fact that the failure of the defendant's automatic signal to indicate the approach of its train may have induced the plaintiff to relax her vigilance. Under such circumstances, we cannot agree with the interpretation of this statute as urged by the defendant.

For the reasons we have stated, we hold that the plaintiff was not guilty of contributory negligence as a matter of law, and that the District Court, therefore, properly refused to direct a verdict for the defendant.

In the view which we have taken of this case, it is not necessary that we consider the applicability of the doctrine of last clear chance.

The judgment is affirmed.