RICKS *v.* EMERY.

[No. 19,307. Filed October 22, 1962. Rehearing denied November 14, 1962. Transfer denied January 3, 1963.]

*R. Stanely Lawton, Edward J. Ohleyer, Ross, McCord, Ice & Miller,* of counsel, all of Indianapolis, *Frank W. Campbell,* and *Campbell, Campbell, Malan & Kyle,* of counsel, of Noblesville, for appellant.

*Richard P. Nahrwold, Harold Bredell, Bredell, Cooper & Martin,* of counsel, all of Indianapolis, *Ralph H. Waltz* and *Christian, Waltz & Klotz,* of counsel, of Noblesville, for appellee.

GONAS, J.—Appellant instituted an action to recover damages for personal injuries arising out of an automobile collision. The cause was submitted to a jury for trial. At the conclusion of Appellant's evidence, appellee filed a written motion for a directed verdict, which motion was sustained. The jury returned a verdict in favor of appellee and judgment was rendered accordingly.

Appellant filed her motion for a new trial upon the ground that the verdict of the jury is not sustained by sufficient evidence, that the verdict is contrary to law, and "error of law occurring at the trial and excepted to by plaintiff in that the court erred in overruling plaintiff's request for admonition of counsel."

We find no such request for the admonition of counsel in the concise statement of the record in appellant's brief. In the argument portion of her brief appellant states that, "as the commencement of the trial plaintiff filed her request for admonition of counsel. By this request the plaintiff sought the court to admonish counsel as follows;

'Counsel is hereby admonished to make no reference directly or indirectly to any restitution, payment or settlement made to the defendant, William R. Emery, by Francis H. Ricks, husband of the plaintiff, Lucy M. Ricks, and/or RCA.' "

Although it is not clear, we infer from the brief that this was a written request made before the introduction of evidence. What, if any, ruling was made on this request does not appear. No where in the brief do we find any reference made in the evidence or elsewhere to such matter, and there is nothing to show how appellant could have been harmed by such ruling. Inasmuch as the court directed the jury as to what verdict should be returned there is, in this case in particular, a lack of showing of harm, and we need not further notice this alleged error.

The following allegations of negligence are contained in ¶ #8 of appellant's complaint:

(a) The defendant [appellee] negligently and carelessly failed to exercise reasonable care in maintaining a careful lookout for approaching automobiles including the 1953 Studebaker automobile in which plaintiff [appellant] was riding as a passenger.

(b) The defendant [appellee] negligently and carelessly failed to give the right-of-way to the said 1953 Studebaker automobile in which plaintiff [appellant] was riding as a passenger.

(c) The defendant [appellee] negligently and carelessly failed to keep the said 1952 Ford automobile under control, where by the exercise of reasonable care he could have steered his vehicle and applied his brakes to avoid the collision herein complained of.

(d) The defendant [appellee] negligently, unlawfully and carelessly operated the said 1952 Ford automobile at the high and dangerous rate of speed of thirty five (35) miles per hour, where the fixed or prima facie speed is twenty (20) miles per hour.

(e) The defendant [appellee] negligently and carelessly failed to apply the brakes on the said 1952 Ford automobile, and avoid said collision with said 1953 Studebaker automobile in which plaintiff [appellant] was riding as a passenger,

(f) The defendant [appellee] negligently, carelessly and unlawfully drove and operated the said 1952 Ford automobile, when he knew or by the exercise of reasonable care should have known that the right front headlight on the said 1952 Ford automobile was not operating in such manner as to render clearly discernible persons and vehicles, including the aforesaid 1953 Studebaker, at a distance of five hundred (500) feet ahead.

(g) The defendant [appellee] negligently, carelessly and unlawfully operated the said 1952 Ford automobile at the speed of 35 miles per hour in violation of Section 4-402 of the Municipal Code of Indianapolis, Indiana.

(h) The defendant [appellee] negligently and carelessly operated the 1952 Ford automobile at the high and dangerous rate of speed of 35 miles per hour considering all the surrounding circumstances then and there existing.

(i) The defendant [appellee] carelessly and negligently failed to sound a horn or any other warning to the plaintiff [appellant] herein so as to give warning of his approach.

Proof of any one proper allegation of negligence is sufficient. I. L. E. Negligence §147.

In determining whether a verdict should have been directed we ". . . must accept as true all the facts which the evidence tends to prove and to draw against the party requesting such instruction, all inferences which the jury might reasonably draw." *Whitaker, Admr.* v. *Borntrager* (1954), 233 Ind. 678, 122 N. E. 2d 734; *Tabor* v. *Continental Baking Co.* (1942), 110 Ind. App. 633, 38 N. E. 2d 257; I. L. E. Trial §135.

From the admissions in the pleadings and from the evidence most favorable to appellant it appears that appellant and her daughter were riding in the front seat of a car owned and being operated by her husband, traveling south on North Arlington Avenue in

the City of Indianapolis, approaching East 24th Street, at a speed of not over 20 miles per hour. Both appellant and her husband were employed and were on their way to work, and were going to leave the child with appellant's sister on the way to work, as they had been doing for many months. Appellee was operating an automobile in a northerly direction on North Arlington Avenue, approaching its intersection with East 24th Street. A collision occurred at the intersection at 6:51 A.M., DST. It was cold, but it was not raining or icy and there was no snow on the ground. The street was dry. It was dark, the street lights were on, and the car in which appellant was riding had its headlights on as did the other vehicles. Arlington Avenue was about 18 feet wide, with a berm on each side of about 10 feet. At the time of the accident there was no line in the center of the street. East 24th Street was about 30 feet wide. There were signs on both sides of North Arlington Avenue indicating that the speed limit was 20 miles per hour.

Appellant's husband testified as follows;

"Well, I was going south on Arlington about 150 feet from the intersection of 24th Street I put on my turn signal for a left turn, sat there a little while because a car was coming the other way and it went on north on Arlington. I looked down here again and saw no car because I could not see any approaching. I could see a car parked over here waiting to come out on Arlington, but I could not see a car down here. At that time I started to turn here and I don't know whether I was exactly in the middle of the road or where, because there was no lines down the street at that time. You could not tell exactly the center, and whether at the time of the accident I was going or stopped, I don't know. But, anyway, there was this flash of light, and about the middle of the road, looked to me like about the middle of the road somewhere ahead of me, not too

far away. There was nothing I could do. In an instant I was hit. I did not hear any horn. I did not see anything except this light just the instant before the impact and it was only one light."

He again testified to much the same effect: "Then coming down Arlington, I would say about 150 feet from the intersection where I turned on my turn signal for a left turn and come on down here to about the ... I would say it was about the middle of 24th Street if there were a line coming out there and I was settling down here, possibly turned here a little way, maybe, you see, with the front wheels a little father from the road than the back wheels. I stopped there and let a car which was coming up Arlington go by. I saw this car setting here, Mr. Kopp's car setting here, but I could not see a car down here approaching me until just before the impact I saw a bright flash of light, looked like it was in about the center of the road, about the middle of the road. I think that even at the time of the accident I was in my lane of traffic, but the lanes were not marked on it. It is possible my car could have been over the center mark, if there were one, and I even think from the light, from seeing this light which later turned out to be Mr. Emery's car, could also have been over the center line. I do not know because there is no center line down Arlington. At that time there was not."

The flash of light was described as appearing like a flash bulb or flashlight. The time between the flash of light and the impact was a half second or a second, and he "did not have an opportunity to judge the speed of the flash of light." Neither appellant or her husband heard any squeal of brakes prior to the impact. Appellant's husband looked down Arlington Avenue but did not see appellee's car prior to the flash of light. His windshield was clear. He also testified that the bright light "looked like it was in the center of the road." He also testified that it seemed to him there were two impacts and that following the

second, his car was driven backwards, although how far backwards does not appear.

After the impact the car in which appellant was riding was facing in a southeasterly direction in his lane of traffic. There was no evidence as to where appellee's car stopped following the accident. Photographs of both cars were introduced in evidence. The car in which appellant was riding was damaged in the "center front, left front, and left fender in the front." There was no evidence as to whether or not there were any skid marks on the pavement.

The accident happened on a Monday, and on the following Friday appellant's husband observed appellee's car in a garage and testified as follows with reference to the headlamp and right front fender;

"Inside the hole where the headlamp is supposed to be it was rusty and I saw no glass of any kind in there, no particles of any glass, and the fender around from the headlight was a little bit rusty and appeared to have been damaged earlier than the accident. It had not rained since the accident and the cars had been in the garage all week since the time of the accident. They towed them down to the garage and it was rusty, the fenders were rusty around the headlight."

Another witness, a chemical engineer, testified that he also observed appellee's car on Friday, and with reference to the front portion stated;

"What I saw was the paint had been scraped and damaged and there was a heavy amount of rust and weathering of materials on the underside of the car metal."

He further testified that there was no sealed beam or sealed beam socket in the right front headlight and that he observed a surface coating of oxide on the frame and the metal of the interior part of the right

front headlight; that the left headlight was facing left and downwards and the right headlight was pointing right or in the other direction from the left headlight. The body of the car pushed back from the front frame where the bumpers are attached approximately one half foot. There was no evidence as to whether any work had been done on the car following the accident and in the same condition as it was immediately following the accident.

There is no allegation in appellant's complaint that appellee was operating his automobile without any lights turned on, or that the lights were turned on just before the collision. The allegation is that appellee knew or by the exercise of reasonable care should have known that the right front headlight was not operating in such a manner as to render discernible persons and vehicles ahead. Appellant's husband testified that he saw a light an instant before the impact, about the middle of the road, and it was only one light. From all the evidence the jury could reasonaly infer that appellee's right front headlight was either not operating at the time of the collision or was not pointed in the proper direction.

From the evidence that it was dark at the time of the collision; that appellant's husband looked to the south; his windshield was clear; and he saw no lights of an approaching vehicle; the jury could find that appellee was driving his automobile in the dark without other than street lights to aid his vision, and was not, therefore, keeping a proper lookout. Negative as well as positive evidence must be considered. *Taylor* v. *Fitzpatrick* (1956), 235 Ind. 238, 132 N. E. 2d 919.

Appellee would have us say that appellant's husband was guilty of contributory negligence as a matter of law under the evidence, which proximately caused the accident. This, we believe, was for the determination of the jury. Other questions are argued, the question of whether under the evidence appellant would have been chargeable with the contributory negligence of her husband, but we do not deem it desirable to decide them. A new trial must be had.

We conclude that a verdict should not have been directed.

Judgement reversed, with instructions to sustain appellant's motion for a new trial.

Kelley, C. J., and Pfaff, J., concur.

Bierly, J., concurs in result.

NOTE.—Reported in 185 N. E. 2d 546.