**Lillian HAMMOND and George Hammond, Plaintiffs-Appellants,**

v.

**SCOT LAD FOODS, INC., and Scot Lad Foods, Inc., d/b/a Thrif-T-Mart, Defendant-Appellee.**

No. 1–481A128.

Court of Appeals of Indiana, First District.

June 15, 1982.

Robert L. Dalmbert, Dalmbert & Marshall, Columbus, for plaintiffs-appellants.

Thomas C. Bigley, Jr., James F. Rosner, Sharpnack, Bigley, David & Rumple, Columbus, for defendant-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Plaintiffs-appellants Lillian Hammond and George Hammond (Hammonds) appeal a negative judgment rendered by the Bartholomew Circuit Court upon adverse jury verdicts in Lillian's action for personal injuries and George's action for loss of consortium against Scot Lad Foods, Inc. and Scot Lad Foods, Inc. d/b/a Thrif-T-Mart (Scot Lad). The action grew out of injuries allegedly received by Lillian when she was struck with boxes of fruit jars which fell on her from a display while shopping in Scot Lad's store.

## ISSUES

Hammonds present two issues for review in this appeal as follows:

I. Did the trial court err in refusing to give appellants' (plaintiffs') Tendered Instruction No. 3, which is a *res ipsa loquitur* instruction?

II. Did the trial court err in refusing to give appellants' Tendered Instruction No. 5, which is an instruction based upon the unexplained failure to call a witness under the control of the defendant, who, presumedly would testify to facts material to the case?

## DISCUSSION AND DECISION

*Issue I. Res ipsa loquitur*

Error is predicated upon the trial court's refusal to give Hammonds' tendered *res ipsa loquitur* Instruction No. 3, the same being Indiana Pattern Jury Instruction No. 7.11, which reads as follows:

"There is a doctrine in law called *res ipsa loquitur* which doctrine may come into effect under certain conditions in a negligence case. In order for the doctrine to apply you must find that the following facts existed at the time of the occurrence in question:

First: That plaintiff was injured [damaged] as a proximate result of the occurrence.

Second: That the instrumentality causing the injury [damage] was under the exclusive control of the defendant.

Third: That the occurrence was of a sort which usually does not occur in the absence of negligence on the part of the person in control."

No other *res ipsa loquitur* instruction was given and Hammonds did not tender any further instruction on *res ipsa loquitur*, and specifically, they did not tender Indiana Pattern Instruction No. 7.13, which reads as follows:

"In this case if you find that:

First: The plaintiff was injured [damaged] as a proximate result of [Here set out the occurrence, *e.g.*, the falling chandelier.]

Second: That the [Here set out the instrumentality, *e.g.*, chandelier.] was under the exclusive control of the defendant [defendant's agent] and

Third: That the [Here set out the occurrence, *e.g.*, falling of the chandelier.] was of such a nature that it usually would not occur in the absence of negligence on the part of defendant [defendant's agent] then you may infer that defendant was negligent and you may consider this inference together with all the other evidence in the case in arriving at your verdict."

Comment to Pattern Instruction No. 7.13 reads as follows:

"This instruction should be properly modified to reflect the factual situation as disclosed by the evidence and given following instruction 7.11."

■ In considering whether any error results from the refusal to give a tendered instruction we must first determine: (1) whether the tendered instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions which are given. *Dahlberg, Administratrix v. Ogle,* (1978) 268 Ind. 30, 373 N.E.2d 159. *Davis v. State,* (1976) 265 Ind. 476, 355 N.E.2d 836.

Instruction No. 7.11, by itself, is an incomplete statement of the law relative to the application of *res ipsa loquitur,* and is not only erroneous but would have been grossly misleading and confusing had it been given to the jury in that form. It does not tell the jury about the inferences, which is the heart of *res ipsa loquitur,* or how to apply *res ipsa loquitur.* This was the purpose of Instruction 7.13, which was intended to accompany 7.11.

■ The general rule of *res ipsa loquitur* was stated in *New York, Chicago & St. Louis Railroad Company v. Henderson,* (1957) 237 Ind. 456, 146 N.E.2d 531. *Res ipsa loquitur* is a rule of evidence and under the doctrine an inference of negligence can be drawn from certain facts. The doctrine can be applied where the injuring instrumentality is shown to have been exclusively under the management and control of the defendant or his servants and the accident is such as in the ordinary course of things

does not happen if those who have the management and control use proper care. Once a plaintiff has presented sufficient evidence to bring himself within the operation of the doctrine the burden of going forward with the evidence to explain the accident (not the burden of persuasion) is cast upon the defendant. *See Snow v. Cannelton Sewer Pipe Company,* (1965) 138 Ind. App. 119, 210 N.E.2d 118. However, even though the defendant comes forward with an explanation of the accident and evidence of his careful inspection, tests, and due care, the inference of negligence drawn from the facts does not disappear from the case, but remains, and is placed upon the scales to be weighed by the trier of facts with any and all explanations of the defendant, and all of the other evidence. *Snow, supra.*

■ As is seen, the tendered instruction is woefully inadequate to instruct the jury on the inferences or the application of the doctrine of *res ipsa loquitur,* and as such, if given, would have caused mischief. However, this question was not raised by the parties on appeal in their briefs. Although such procedure is frowned upon, we have elected to affirm the action of the trial court on the inadequacy of the instruction, rather than for the reasons advanced by Scot Lad. Such action is not unprecedented. "It is always a dangerous and hazardous matter for any court to attempt to determine an issue without the help of the counsel in the cause and without giving the parties an opportunity to present their respective viewpoints. Such procedures should be avoided if possible." *J. I. Case Company v. Sandefur,* (1964) 245 Ind. 213, 216, 197 N.E.2d 519. *See Morgan County REMC v. Public Service Company of Indiana,* (1970) 253 Ind. 541, 255 N.E.2d 822. In identifying the questions presented for review on appeal, the rules of procedure must be construed to the end that only questions which are ruled upon by the trial court, and presented to the reviewing court in the same way will be reviewable. *Clarkson v. Department of Insurance, etc.,* (1981) Ind. App., 425 N.E.2d 203; 2 I.L.E. Appeals § 466. The rule is not, however, conclusive.

In *L. S. Ayres & Company v. Hicks*, (1942) 220 Ind. 86, 40 N.E.2d 334, *pet. reh. den.*, 220 Ind. 86, 99, 41 N.E.2d 195, our Supreme Court by Chief Judge Shake stated:

"While alleged errors not presented and discussed in the appellant's brief will be treated as waived, this court does not regard itself as required to accept or reject the specific reasons advanced by a litigant to sustain his contentions. *Keeshin Motor Express Co. v. Glassman* (1942), 219 Ind. 538, 38 N.E.(2d) 847. The practice rule to the effect that alleged errors, not specifically pointed out in the appellant's brief, will be treated as waived was not intended to circumscribe the reviewing tribunal. The purpose of the rule is to relieve the court of the burden of searching the record and briefing the case and to place that responsibility on the party asserting error. It will not be carried so far as to require the court to close its eyes to that which is apparent. To do so would not infrequently place us in the unhappy situation of lending tacit approval to an instruction palpably bad on its face, and this could only result in confusing the law and misleading the profession. In *Big Creek Stone Co. et al. v. Steward et al.* (1895), 144 Ind. 205, 210, 42 N.E. 464, 43 N.E. 5, it was observed in this connection that 'If the court were limited to the arguments and reasoning of counsel in its decisions of cases, to the exclusion of its own observations, many cases would lead us far from what we understand to be the true object of the court,' In the instant case we have done nothing more than to state cogent reasons, not advanced by counsel, to sustain an assignment, properly made and presented, to the effect that reversible error was committed in the giving of the appellee's sixth instruction."

■ We view this instruction as being palpably bad on its face, and, as stated in *L. S. Ayres & Company, supra*, to approve that instruction by itself could only have the effect of confusing the law and misleading the profession. Therefore, we hold that the trial court did not err in refusing Instruction No. 3 (7.11) by itself, unaccompanied by 7.13 or some similar instruction.

*Issue II. Missing Witness Instruction*

■ Hammonds contend that the trial court erred in refusing to give Indiana Pattern Jury Instruction No. 3.13, which reads as follows:

"The unexplained failure of a party to produce a witness within its control may give rise to an inference that had such witness testified, the testimony of such witness would have been unfavorable to that party's case."

This court held in *Cauldwell, Inc. et al v. Patterson*, (1961) 133 Ind.App. 138, 177 N.E.2d 490, that it is not error to refuse to give a missing witness instruction where such witness was as available to both sides. More recently, in *Chrysler Corporation v. Alumbaugh*, (1976) 168 Ind.App. 363, 342 N.E.2d 908, we held that the instruction is properly refused when not required by the evidence, or where the witness was available to both sides. To be reversible error, the appellant must demonstrate harm. There are many reasons why a witness may not be called, and not because he will testify adversely. *Chrysler Corporation, supra.*

The potential witness here is a stock boy, Charles Hartwell, who was on duty at the time of the accident. However, the store closed in 1978, and it is not shown that he was still an employee, nor is there any showing as to why he was not called by Hammonds (His name and address appeared on a witness list). Further, there is no showing as to what he could testify to. We perceive that Hammonds have made no showing of harm.

Judgment affirmed.

RATLIFF, P. J., and ROBERTSON, J., concur.