**Esther PEDERSEN and Wilbur Pedersen, Appellants (Plaintiffs),**

v.

**WHITE–EVANS ELEVATOR COMPANY, INC., Appellee (Defendant).**

No. 49A02–8603–CV–73.

Court of Appeals of Indiana, Second District.

June 8, 1987.

Publication Ordered Aug. 10, 1987.

Frederick W. Crow, Young & Young, Indianapolis, for appellants.

Norman T. Funk, Hill, Fulwider, McDowell, Funk & Matthews, Indianapolis, for appellee.

BUCHANAN, Judge.

## CASE SUMMARY

Appellants-plaintiffs Esther Pedersen (Esther) and Wilbur Pedersen [hereinafter

collectively referred to as the Pedersens] appeal the jury finding that appellee-defendant White-Evans Elevator Company, Inc. (White-Evans) was not liable for Esther's injuries as a result of an elevator accident, claiming the trial court erred in refusing to give instructions on res ipsa loquitur, in excluding the testimony of two of the Pedersens' witnesses, and in failing to give the Pedersens' tendered instructions concerning the weight and admissibility of negative evidence.

We affirm.

### FACTS

On February 8, 1983, Esther, an employee of University Heights Hospital (the Hospital), was riding an elevator at the Hospital from the first to the second floor when the elevator allegedly "overshot" the second floor, hitting the top of the elevator shaft, falling down to the second floor, thus injuring Esther's back. Also riding on the elevator was Shirley Hockersmith (Hockersmith), who noticed no abnormal movements or sounds in the elevator, and testified that the elevator proceeded slightly past the second floor and then gradually "settled" back down. Hockersmith was not injured, nor did she believe that Esther could have been injured by the elevator's activity.

White-Evans installed the elevator at the Hospital and entered into a contract with the Hospital to provide maintenance and repair of the elevator. The Hospital's maintenance director testified that the Hospital's own maintenance department routinely responded to alleged malfunctions of the elevator before contacting White-Evans, although White-Evans was the only company providing maintenance and repair for the elevator. The elevators operated on electrical power supplied by the Hospital. White-Evans found a deficient voltage of electrical power being supplied to the elevator three days before the incident occurred. White-Evans made regular maintenance calls on the Hospital's elevators, and also responded to the Hospital's reports of any malfunctions.

White-Evans received notice of similar malfunctions of the same elevator on February 1 and 2, 1983, after which White-Evans inspected the elevator and found it working properly. White-Evans replaced the elevator's motor after another reported malfunction on February 4, 1983.

White-Evans was unable to find any manifest problem with the elevator after Esther was injured. The elevator did not overshoot at any time that White-Evans was inspecting the alleged problem. Although the employees of White-Evans testified that overshooting could be caused by numerous factors, they were unable to arrive at a conclusion as to the elevator's overshooting on this particular occasion.

An employee of White-Evans, Kevin Fillmore (Fillmore), testified that the lack of a proper amount of voltage furnished by the Hospital's power system to the elevator's call relays could cause overshooting. In fact, after inspecting the malfunction which allegedly caused Esther's injuries, Fillmore altered the call relays on the elevator and thereby caused overshooting.

The jury returned a verdict for White-Evans, from which the Pedersens now appeal.

### ISSUES

The Pedersens raise three issues which we restate as:

1. Did the trial court err in refusing to give jury instructions on res ipsa loquitur?

2. Did the trial court err in excluding the testimony of two of the Pedersens' witnesses concerning prior accidents occurring in the same elevator?

3. Did the trial court err in refusing to give instructions on the weight and admissibility of negative evidence?

*ISSUE ONE*—Did the trial court err in refusing to give jury instructions on res ipsa loquitor?

*PARTIES' CONTENTIONS*—The Pedersens argue that the trial court erred in refusing to give instructions on res ipsa loquitor because there was sufficient evidence from which the jury could have inferred that White-Evans was in control of

the elevator, and that the malfunction would not have occurred but for White-Evans' negligence.

White-Evans answers that the trial court did not err because the Pedersens failed to produce evidence establishing that the elevator was within White-Evans' control, that the elevator accident was more probably caused by White-Evans' negligence than by another cause, and that White-Evans was responsible for all reasonably probable causes of the elevator's malfunction.

*CONCLUSION*—The trial court did not err in refusing to give the Pedersens' tendered instructions on res ipsa loquitur because the evidence failed to support the instructions.

In reviewing a trial court's refusal to give tendered instructions, we use a three-part inquiry: (1) whether the tendered instructions are correct statements of the law, (2) whether there is evidence in the record to support the instructions, and (3) whether the substance of the instructions are covered by other instructions given by the court. *Orville Milk Co. v. Beller* (1985), Ind.App., 486 N.E.2d 555; *Shull v. B.F. Goodrich Co.* (1985), Ind.App., 477 N.E.2d 924, *trans. denied.*

The res ipsa loquitur doctrine is essentially a rule of evidence which permits an inference of negligence to be drawn from a certain set of facts. *Hammond v. Scot Lad Foods, Inc.* (1982), Ind.App., 436 N.E.2d 362. The rationale for the doctrine is that in certain situations a happening is so uniquely unusual, that without reasonable justification, those shown to be in exclusive control of the injuring instrumentality should be held responsible. *Shull, supra; Carpenter v. Campbell* (1971), 149 Ind.App. 189, 271 N.E.2d 163. The doctrine will apply when the injuring instrumentality is shown to have been under the exclusive control of the defendant, and the accident is one which in the ordinary course of things does not happen if those in control of the instrumentality employ proper care. *Shull, supra; SCM Corp. v. Letterer* (1983), Ind.App., 448 N.E.2d 686, *trans. denied; Bituminous Fire & Marine Ins. Co. v. Culligan Fyrprotexion, Inc.* (1982),

Ind.App., 437 N.E.2d 1360; *Deming Hotel Co. v. Prox* (1968), 142 Ind.App. 603, 236 N.E.2d 613, *trans. denied.*

The judge's duty in determining whether to give a res ipsa loquitur instruction is to "determine whether the plaintiff has produced evidence from which a jury could reasonably conclude the existence of the underlying elements of exclusive control and probability of negligence. If there is no such evidence the instruction is properly refused." *Shull, supra,* at 928. Thus, the Pedersens were required to show both that the elevator would not have malfunctioned without negligence on the part of those in control and that White-Evans was the party in exclusive control. *See id.*

■ The evidence adduced at trial does not permit us to conclude that there was the *probability of negligence* on the part of White-Evans or that White-Evans was in *exclusive control* of the elevator when the malfunction occurred. In order to show the probability of negligence on the part of White-Evans, the Pedersens had to put forth evidence from which a reasonable person could conclude that more likely than not the accident was caused by White-Evans's negligence. *Id.* To show exclusive control by White-Evans, the Pedersens needed to show that White-Evans had the right and opportunity to exercise control or that "the evidence reasonably eliminate[d] explanations other than the defendant's negligence." *Id.* at 931.

> "The injury must either be traced to a specific instrumentality or cause for which the defendant was responsible, or it must be shown that he was responsible for all reasonably probable causes to which the accident could be attributed."

W. PROSSER, HANDBOOK OF THE LAW OF TORTS § 39, at 218 (4th ed. 1971) (footnotes omitted).

■ It is undisputed that White-Evans was contractually obligated to the Hospital to repair and maintain the elevator. *Record* at 619; *Appellee's Brief* at 18. There was no evidence, however, which indicated the probability of negligence, i.e., that this type of accident ordinarily would not have occurred without proper care on

the part of White-Evans. The evidence likewise failed to show exclusive control by White-Evans, i.e., that Esther's injury was traced to a cause for which White-Evans was responsible or that White-Evans was responsible for all reasonably probable causes to which the accident could be attributed. *See Shull, supra.*

At the most, the evidence demonstrated that there were potentially numerous causes of overshooting of the elevator. Fillmore was unable to come to a conclusion as to the cause of the malfunction because the elevator failed to repeat the specific malfunction when he inspected it. The only cause of the elevator's overshooting which was explained in any detail was an electrical deficiency. Fillmore stated that a voltage deficiency in a building would "cause very erratic operations, which could include overshooting." *Record* at 715. The Hospital was completely in control of maintaining the voltage supply to the elevators. *Record* at 471, 715. The evidence showed that by preventing the call relays from working properly, Fillmore was able to re-create the overshooting. Fillmore stated that a "low voltage situation" was the only problem that he could think of which would prevent the call relays from properly working. *Record* at 721. Even though it could not be said with certainty that low voltage supplied by the Hospital caused the overshooting, the Pedersens put forth no specific evidence as to a potential cause of the malfunctioning in White-Evans's control or evidence to link the malfunctioning with White-Evans's negligence. *See Bituminous, supra* (plaintiff failed to exclude reasonable possibility of other causes of injury outside defendant's control and thus failed to show exclusive control).

■ The Pedersens failed to show that it was more likely than not that White-Evans's negligence was the cause of Esther's injury. Therefore, the Pedersens' tendered instructions were not supported by sufficient evidence, and there was no error in the trial court's refusal to give them.

*ISSUE TWO*—Did the trial court err in excluding the testimony of two of the Ped-

ersens' witnesses concerning prior accidents occurring in the same elevator?

*PARTIES' CONTENTIONS*—The Pedersens contend that the trial court erred in refusing to allow two of their witnesses to testify concerning prior malfunctions of the elevator because White-Evans opened the door to the subject on direct examination of one of its witnesses. The Pedersens assert that the proffered testimony would have related similar, relevant occurrences demonstrating notice by White-Evans of a dangerous condition.

White-Evans counters that the trial court did not abuse its discretion in excluding the evidence, as the evidence was remote in time and did not occur under substantially similar circumstances. White-Evans further contends that any error was harmless because other evidence serving substantially the same purpose was introduced, and because the Pedersens were allowed to cross-examine White-Evans' witness on that subject.

*CONCLUSION*—The trial court did not err in excluding the testimony of two of the Pedersens' witnesses concerning similar occurrences of a malfunctioning by the same elevator on a prior occasion.

Before trial, the trial court granted White-Evans' motion in limine which asked the court to preclude evidence concerning an accident on the same elevator occurring in September, 1982. At trial, the Pedersens presented, outside the jury's presence, the testimony of Gladys Osman (Osman) and David Gorman (Gorman), who had been involved in the accident in September, 1982. After the testimony, the court sustained the motion in limine on the grounds that the incident was too remote in time, and that there was no indication that White-Evans was given notice of this particular incident. *Record* at 357. The Pedersens urged this as error, and also that the trial court also erred in not allowing Osman and Gorman to testify after White-Evans "opened the door" by presenting evidence of the September 1982 occurrence in its case-in-chief.

This Court will not reverse a trial court's rejection of evidence unless the excluded

evidence is vital to the case and was erroneously refused. *Peaches v. City of Evansville* (1979), 180 Ind.App. 465, 389 N.E.2d 322, *cert. denied,* 444 U.S. 1033, 100 S.Ct. 704, 62 L.Ed.2d 669. The admission of prior accidents of similar characteristics under the same circumstances to prove the existence of a dangerous condition and notice thereof is a matter left to the discretion of the trial court. *State v. Willian* (1981), Ind.App., 423 N.E.2d 668; *Bottoms v. B & M Coal Corp.* (1980), Ind.App., 405 N.E.2d 82. Remoteness and confusion are recognized grounds on which to exclude evidence of a prior occurrence. *See* 29 Am.Jur.2d *Evidence* § 305 (1967).

■ The trial court's initial refusal to vacate the order in limine was not an abuse of discretion. The Pedersens's offer to prove showed that the same elevator malfunctioned in September, 1982, however, there was no showing that White-Evans received notice of the malfunction or what the cause of the malfunction was in September, 1982. There was admitted in evidence testimony of similar prior occurrences on the same elevator on February 1, 1983, February 2, 1983, and February 4, 1983. The evidence showed that White-Evans was placed on notice of these malfunctions, thus serving the same purpose as would the evidence of the September, 1982 occurrence. We cannot conclude that the evidence was vital to the Pedersens's case or was erroneously refused.

White-Evans's president, Steven Louis Stuard (Stuard), testified in White-Evans's case-in-chief that he had received notice of an occurrence on the same elevator four to five months prior to the present accident, but was unsure of the date. *Record* at 856–57. On cross-examination, the Pedersens were permitted to elicit from Stuard that White-Evans received notice of the September, 1982 incident on approximately January 10, 1983. The Pedersens further questioned Stuard on what actions he took after receiving the notice. *Record* at 865–66.

■ After the close of White-Evans's case, the trial court again refused to permit Osman and Gorman to testify concerning the September, 1982 incident. It was within the trial court's discretion to exclude this evidence since its prejudicial impact outweighed its probative value. *See Rust v. Guinn* (1982), Ind.App., 429 N.E.2d 299, *trans. denied.* Even if we could say that the trial court abused its discretion in not allowing the testimony, the Pedersens have failed to demonstrate in what way they were prejudiced by the exclusion. *See City of Indianapolis v. Ervin* (1980), Ind.App., 405 N.E.2d 55. The Pedersens were allowed to cross-examine Stuard to determine when White-Evans received notice, and what actions were then taken. Further evidence demonstrated malfunctions of the elevator on three occasions in February, 1983, thus providing substantial evidence of prior similar occurrences and notice given to White-Evans. The trial court did not abuse its discretion.

*ISSUE THREE*—Did the trial court err in refusing to give instructions on the weight and admissibility of negative evidence?

*PARTIES' CONTENTIONS*—The Pedersens claim the trial court erred in refusing their proffered instructions on the weight and admissibility of negative evidence, asserting that such evidence being admitted, without objection, would raise collateral issues and confuse the jury.

White-Evans submits that the Pedersens' tendered instructions unduly emphasized the weight of negative evidence, and improperly instructed the jury not to weigh all of the evidence.

*CONCLUSION*—The trial court did not err in refusing to give the Pedersens' tendered instructions concerning the weight and admissibility of negative evidence because they could potentially have eliminated probative evidence from the jury's consideration.

The Pedersens' tendered instruction No. 1 read:

"You are instructed that negative evidence which is evidence showing that the nonoccurrence of an event, either an accident or injury, is not competent to show that a place where an accident occurred was reasonably safe and free from dan-

ger. The defendant has introduced evidence that the passenger who was with Esther Pedersen at the time that she states that she was injured was not injured and that various individuals, including the defendant's employees rode on the same elevator and the elevator did not malfunction. This evidence is negative evidence and does not show a lack of negligence on the defendant's part, nor does it show that the elevator was reasonably safe and free from danger at the time that the plaintiff was injured on the elevator."

*Record* at 113.

The Pedersens' tendered instruction No. 10 read:

"You are instructed that negative evidence is evidence of the nonoccurrence of an event and is considered weak, especially when opposed to positive evidence of an event."

*Record* at 118.

Negative evidence is admissible, *Snow v. Cannelton Sewer Pipe Co.* (1965), 138 Ind. App. 119, 210 N.E.2d 118, *trans. denied,* and must be considered by the jury in addition to positive evidence. *Taylor v. Fitzpatrick* (1956), 235 Ind. 238, 132 N.E.2d 919; *Ricks v. Emery* (1962), 134 Ind.App. 182, 185 N.E.2d 546, *trans. denied.* Although negative evidence may be weak compared to positive testimony, in some instances negative testimony is preferred to positive.

"[I]f there is evidence that the attention of a negative witness was specially directed to the matter, or it can be legitimately presumed or inferred that he was alert and would, in the ordinary course of events, have observed the fact had it occurred, his testimony that he did not see or hear, or that the fact did not occur, is not necessarily weaker than opposing positive and affirmative testimony, and may indeed be entitled to more weight than the latter."

32A C.J.S. *Evidence* § 1037 (1964); *see also Fankboner v. Schubert* (1982), Ind. App., 431 N.E.2d 856, *trans. denied.* Whether negative evidence has the same probative value as positive evidence is for

the jury to determine. *Bartley v. Chicago E.I. Ry. Co.* (1939), 216 Ind. 512, 24 N.E.2d 405; *Callahan v. New York Cent. R.R. Co.* (1955), 125 Ind.App. 631, 125 N.E.2d 263, *trans. denied.*

■ In this case, Hockersmith was standing a few feet from Esther in a position to observe and experience the effect of the elevator when it allegedly malfunctioned. Hockersmith and Esther were facing in the same direction, and Esther was in full view of Hockersmith. Hockersmith's testimony had probative value because it shed light on how the elevator malfunctioned, and the effect of the malfunctioning on both Esther and herself. The testimony lent further probative value as it related to the credibility of Esther's testimony. The tendered instructions could have had the effect of eliminating Hockersmith's testimony in the jury's consideration, and thus eliminating evidence of probative value. The trial court correctly instructed the jury to determine the facts from a consideration of all the evidence, and did not err in refusing to give the potentially confusing and prejudicial instructions.

For these reasons, we affirm the judgment of the trial court.

SHIELDS, P.J., concurs.

SULLIVAN, J., concurs in result with separate opinion.

SULLIVAN, Judge, concurring in result.

Although I agree with the result obtained in this decision, I do not agree with all that my colleagues say in the decision.

With respect to Issue I, I must respectfully disagree with the majority's conclusion that there was no evidence which indicated the probability of negligence on the part of the defendant. There was such evidence. However, the doctrine of res ipsa loquitur became inapplicable in the light of other evidence which concerned the power shortage, for which the hospital was responsible, as a likely cause.

I must also disagree with my colleagues insofar as they equate exclusive control with causation. As we stated in *Shull v.*

*B.F. Goodrich Co.* (1985) 2d Dist. Ind.App., 477 N.E.2d 924, 931:

"In some situations 'control' is simply the wrong word and the courts should determine whether the evidence reasonably eliminates explanations other than the defendant's negligence."

In my view, this is such a case.

I therefore concur in the affirmance of this judgment because the evidence does not demonstrate that the event was more probably occasioned by the negligence of the defendant than by some other cause.

Here, what might well have been an otherwise appropriate inference of negligence through application of res ipsa loquitur was rendered inappropriate by the testimony concerning the power deficiency as the likely cause of the malfunction.

With respect to Issue II, I believe that the defendant's direct examination of witness Stuard opened the door for plaintiff's proffered evidence concerning the occurrence of September, 1982. Accordingly, I believe it was error for the trial court to exclude that testimony. However, I conclude that such error was harmless in that defendant was permitted to fully explore the circumstances of the occurrence in cross-examining Stuard. The only aspect of the occurrence not thereby covered, was the fact, *vel non,* of injury to the then occupants of the elevator. This uncovered aspect of the September, 1982 event was not relevant to the case before us.

With respect to Issue III, I agree that the trial court correctly refused to give plaintiffs' tendered Instruction Nos. 1 and 10. In my view, tendered Instruction No. 1 was defective because it stated that plaintiff was in fact injured on the elevator. Quite clearly, and with good reason, this issue was in genuine dispute. Instruction No. 10, as tendered, erroneously advised the jury to give more weight to one class of evidence than to another.

With the exception of the matters herein stated, I can and do agree with the decision and agree that the judgment should be affirmed.