Carolyn S. NEWELL, Plaintiff–Appellant,

v.

WESTINGHOUSE ELECTRIC CORPO-RATION, doing business as Westing-house Elevator Company, a division of said corporation, Defendant–Appellee.

No. 93–3474.

United States Court of Appeals, Seventh Circuit.

Argued May 17, 1994.

Decided Sept. 20, 1994.

C. Richard Marshall (argued), Michael Thomasson, Columbus, IN, for plaintiff-appellant.

Edward L. Murphy, Jr. (argued), Miller, Carson, Boxberger & Murphy, Fort Wayne, IN, Edward J. Liptak, Miller, Carson, Boxberger & Murphy, Bloomington, IN, for defendant-appellee.

Before BAUER, WOOD, Jr., and EASTERBROOK, Circuit Judges.

BAUER, Circuit Judge.

No barrel of flour has been responsible for more difficulties in the law than the one which fell out a warehouse window in 1863, spawning the case of *Byrne v. Boadle*, 159 Eng.Rep. 299 (1863), in which Baron Pollock, counsel for the plaintiff, argued "the thing speaks for itself" (or in his words "res ipsa loquitur"). Though much has changed since then, res ipsa loquitur remains with us. In this case, we are asked to determine whether the district court's decision granting summary judgment in favor of the defendant on the grounds that the plaintiff, Carolyn Newell, failed to meet her burden under res ipsa loquitur was erroneous. Finding that Newell did satisfy her burden under the law, we reverse and remand for further proceedings.

Newell alleges that on the morning of April 21, 1988, while entering Elevator No. 9 in the Indiana Bell Telephone Building in Indianapolis, the elevator doors slammed shut on her before she was all the way inside. Her neck and shoulders were pinned and held between the doors. The doors did not release until they were manually pulled apart. Newell claims she sustained permanent injuries and disability as a result of the incident. She brought suit against Westinghouse, based upon diversity jurisdiction, contending that Westinghouse's failure to properly carry out its obligations under its maintenance agreement with Indiana Bell contributed directly to Newell's injuries.

The Westinghouse elevators contain two safety features designed to prevent people or

objects from being crushed in the doors as they close. "Safety edges" are attached to each of the center-opening doors and upon contact with an object, trigger the doors' retracting mechanism. Also installed in the elevators are two "traffic sentinels," devices which shoot horizontal beams of light across the elevators entrance area. If either these beams are obstructed, they trigger a relay in the doors' circuitry which causes the doors to reopen. Newell claims that had Westinghouse properly fulfilled its duties under its maintenance agreement with Indiana Bell, these safety devices would have prevented her injuries.

Westinghouse filed a motion for summary judgment on February 12, 1993, in which it argued that Newell's negligent maintenance claim was based on defects in the elevator itself and therefore was really a product liability claim. Westinghouse concluded that because the elevators were installed in 1967, the ten-year statute of repose in the Indiana Product Liability Act barred any claim alleging a defect in the elevator. Ind.Code § 33–1–1.5–5. Alternatively, Westinghouse argued that it was entitled to summary judgment on Newell's negligent maintenance claim because Newell had not met her burden under res ipsa loquitur.

In her opposition to the motion, Newell referred to the deposition and affidavit of expert witness, Steve Stuard, and the deposition of expert witness, Bob Early. Although Stuard and Early conceded that Newell's accident could possibly have been caused by factors other than negligent maintenance, both witnesses ultimately testified that it was more likely that the accident would not have occurred had Westinghouse properly carried out its duties under its preventative maintenance agreement.

In granting Westinghouse's motion, the district court held that regardless of whether Newell's complaint was construed as a product liability claim or res ipsa loquitur-based negligent maintenance action, it failed to raise a genuine issue of material fact and that Westinghouse was entitled to judgment as a matter of law. To the extent that Newell's injuries were the result of product defects in the elevator, the claim was indeed barred by the statute of repose. As for the negligence action, the court held first that the question of whether Newell's accident would not ordinarily occur absent negligence was not capable of resolution without the aid of expert testimony. Because the court found that Newell had failed to point to any expert testimony which suggested such a probability, Westinghouse was granted summary judgment on the negligence theory as well.

In her appeal of this decision, Newell argues that there was sufficient evidence provided by experts in various depositions and affidavits to raise an inference of negligent maintenance under the doctrine of res ipsa loquitur, and, therefore, that this action should be remanded for trial. Alternatively, Newell contends that it is well within a jury's ability to recognize that elevators do not ordinarily crush people absent negligence on the part of those charged with maintaining them. For this reason, Newell claims it was error for the court to require expert testimony on this issue. Because we believe that the trial court erred in not finding that the expert evidence created a genuine issue of material fact, we reverse and remand on that basis alone, and we do not reach Newell's alternative claim.

Summary judgment is appropriate if the pleadings, depositions, affidavits and other submissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If a plaintiff presents sufficient evidence to bring himself within the operation of res ipsa loquitur, the inference of negligence is to be weighed by the trier of fact. *Bituminous Fire & Marine Ins. Co. v. Culligan Fyrprotexion, Inc.*, 437 N.E.2d 1360, 1365 (Ind.App.1982).

Res ipsa loquitur is an evidentiary rule which allows an inference of negligence to be drawn from a certain set of facts. *Pedersen v. White–Evans Elevator Co., Inc.*,

511 N.E.2d 460, 463 (Ind.App.1987). Underlying the rule is the tenet that certain accidents are so unusual that the party shown to be in exclusive control of the injuring object ought to be held responsible unless that party can offer a reasonable explanation. The rule relieves a plaintiff who, for example, opens a new tin of chewing tobacco and finds inside a human toe, from having to show exactly what act was responsible for the toe's inclusion in his tobacco. *Pillars v. R.J. Reynolds Tobacco Co.*, 117 Miss. 490, 78 So. 365 (1918).[1] If a plaintiff can demonstrate (1) that the accident was one that does not ordinarily occur absent negligence, and (2) that the injuring instrumentality was in the exclusive control of the defendant, the plaintiff is entitled to a res ipsa loquitur inference.[2] *K–Mart Corp. v. Gipson*, 563 N.E.2d 667, 669 (Ind.App.1990). Our task is to determine whether Newell has produced evidence from which a jury could reasonably find both of these elements.

 A probability of negligence may be supported by expert testimony or common sense inference. Newell must show that her injury is one which would ordinarily not occur in the absence of improper care on the part of those in control of the injuring instrumentality. *Vogler v. Dominguez*, 624 N.E.2d 56, 61 (Ind.App.1993). She contends that Steve Stuard's affidavit and deposition as well as Bob Early's deposition contain testimony sufficient to convince a jury that her injuries were more likely than not the result of negligent maintenance on the part of Westinghouse. We agree.

In his affidavit, Stuard noted an excessive number of service calls placed by Indiana Bell and determined that the service records reflected a "pattern of careless and negligent performance of the inspection, repair, examination, maintenance, cleaning, parts replace-

ments, and service called for in Westinghouse's contract." Indiana Bell became so dissatisfied with its elevator service that it called in two independent elevator companies to provide advice as to how it could reduce the incidence of elevator malfunctions. In his deposition, Stuard testified that based on his investigation, when Newell was injured, she was in a position to activate the two traffic sentinel mechanisms and the safety edges on both doors. The fact that the doors did not retract indicates that there was a failure somewhere in the circuit between those devices and the door reopen relay; a failure which could have been prevented by proper care. Though Stuard conceded that it was possible for such a failure to occur even with proper care and maintenance, the frequency of past malfunctions with traffic sentinels, safety edges, and other equipment, many of which in Stuard's opinion could have been avoided had Westinghouse been properly conducting its maintenance duties at the Indiana Bell building, convinced Stuard that it was more likely that the accident was the result of Westinghouse's failure to clean equipment or to replace worn-out parts. Stuard's investigation, though done after the accident occurred, also revealed that the force with which the doors closed was in excess of industry standards. He concluded:

It is my opinion that Carolyn Newell's accident would not have occurred but for the negligence of Westinghouse in doing its examination, maintenance, inspection, service, repair, and parts replacements work. This type of "door slam" accident was one which, in the ordinary course of things, does not happen if the maintenance company in control of the elevators employs proper care; there was a probability of negligence on the part of Westinghouse

1. In the words of the court, "We can imagine no reason why, with ordinary care, human toes could not be left out of chewing tobacco, and if toes are found in chewing tobacco, it seems to us that somebody has been very careless." *Pillars v. R.J. Reynolds Tobacco Co.*, 117 Miss. 490, 78 So. 365, 366 (1918).

2. Westinghouse asserts that to be entitled to an inference of negligence, the plaintiff must also demonstrate that the accident was not attribut-

able to any voluntary conduct on the part of the plaintiff. The adoption of comparative fault rules in Indiana appears to have removed this as a barrier to recovery. *K–Mart Corp. v. Gipson*, 563 N.E.2d 667, 669 n. 3 (Ind.App.1990). The plaintiff's conduct is, therefore, treated like any other possible cause for the accident. If it can be shown that the accident was more likely caused by the plaintiff's negligence, only then will this prevent a res ipsa loquitur inference.

being involved in Newell's April, 1988, accident.

Bob Early's deposition echoes Stuard's conclusion. He found that service calls were often placed for malfunctions which should have been detected and remedied by proper maintenance. Early also concluded that the accident would not have occurred were it not for negligence on the part of the maintenance company. Between Stuard's and Early's testimonies, a jury could reasonably have found sufficient evidence on which to base a finding of negligent maintenance.

Westinghouse's defense of the summary judgment decision on this point is unpersuasive. It argues that because neither Stuard nor Early could specify a particular act of negligence on the part of Westinghouse, Newell could not succeed on the first prong of her res ipsa loquitur claim. In Westinghouse's view, to raise an inference of negligence, Newell must·be able to show that Westinghouse in some way breached one of its duties under its maintenance agreement. If such an argument could succeed, the whole doctrine would be eviscerated. Mr. Pillars would, for instance, have to prove how the toe worked its way into his new tin of chewing tobacco.

■ Res ipsa loquitur is premised on the notion that sometimes, despite the absence of any direct evidence of a breach of duty, the circumstances of an accident strongly suggest that negligence by a specific person was a probable cause. In these distinct instances, we allow the trier of fact to weigh the likelihood of the defendant's negligence against other explanations. If Newell were able to allege an act of negligence in this case, she would not need to avail herself of res ipsa loquitur. The doctrine exists for cases like this one in which a specific cause for the accident cannot be determined but where persons familiar with the problem believe it to be the result of negligence. We conclude, therefore, that it was error for the district court to hold that Newell failed to adduce evidence from which a jury could find more likely than not that her accident was the product of improper maintenance.

■ Because the district court held that Newell failed to meet the first prong of the res ipsa loquitur inquiry, it did not need to address whether Westinghouse was in exclusive control of the elevators. Westinghouse argues that even if the district court's decision was erroneous, because several Indiana Bell employees had access to the elevator control room, Newell cannot establish that Westinghouse was in sole control of the elevators. Westinghouse claims that because joint control raises the possibility of negligence by another party, the inference of negligence cannot be applied. Indiana Bell's ability to control the elevator, according to Westinghouse, prevents negligence from being inferred against Westinghouse.

■ When used in the res ipsa loquitur context, the term "control" does not require actual physical dominion over an object. A product which explodes long after its shipment from the manufacturer may still be, for purposes of res ipsa loquitur, in the control of the manufacturer if the probability of other causes is small. Fowler V. Harper, The Law of Torts § 19.7, at 48 (2d ed. 1986). To establish exclusive control, the plaintiff need not eliminate with certainty all other possible inferences and causes, but must show only that the likelihood of other causes is so reduced "that the greater probability lies at the defendant's door." *Id.* at 46. A number of different causes or inferences may, therefore, be left to determination by the trier of fact.

The record in this case reveals that the most probable cause of Newell's accident was negligent maintenance of the circuit connecting the safety devices to the door reopening mechanism. Westinghouse's own submissions in support of its summary judgment motion establish that only Westinghouse provided elevator service and maintenance in the Indiana Bell building at the time of the accident. The fact that employees of Indiana Bell had access to the control room or the elevators is of little significance absent any evidence that they in fact engaged in any repair or maintenance themselves.

■ Faced with the identical argument, courts in several states have determined that for purposes of res ipsa loquitur,

a company with an exclusive elevator maintenance agreement has exclusive control of the elevators unless there is a showing of actual interference. *Montgomery Elevator Co. v. Gordon,* 619 P.2d 66, 70 (Colo.1980); *Commercial Union Ins. Co. v. Street,* 327 So.2d 113 (Fla.Dist.Ct.App.1976); *American Elevator Co. v. Briscoe,* 93 Nev. 665, 572 P.2d 534, 537 (1977); *Burgess v. Otis Elevator Co.,* 114 A.D.2d 784, 495 N.Y.S.2d 376, 380 (1985), *aff'd,* 69 N.Y.2d 623, 511 N.Y.S.2d 227, 511 N.Y.S.2d 227 (1986) (holding that exclusive control was established by the building owner's "reliance upon the defendant's expertise to inspect and maintain the intricate devices of the elevator in reasonably safe operating condition, pursuant to the service agreement"); *Weeden v. Armor Elevator Co., Inc.,* 97 A.D.2d 197, 468 N.Y.S.2d 898, 904 (1983) (same); *Johnson v. Otis Elevator Co.,* 225 Pa.Super. 500, 311 A.2d 656 (1973). We agree with this approach. The purpose of the control requirement is to negate to a degree sufficient to support a jury finding, the possibility that the accident was caused by something beyond the defendant's control. Devoid from the record is any evidence indicating that Indiana Bell did anything that would constitute an intervening cause. Requiring a plaintiff to foreclose entirely the possibility of all causes attributable to anyone other than the defendant would "emasculate the doctrine." *Brisco,* 572 P.2d at 670.

Westinghouse contends that Indiana law as represented by the holding in *Pedersen v. White–Evans Elevator Co., Inc.,* 511 N.E.2d 460 (Ind.App.1987) establishes that Westinghouse was not in exclusive control of the elevator's maintenance. In that case, a woman injured her back when an elevator in which she was riding to the second floor of a hospital overshot the second floor before settling back down. She sued the elevator maintenance company for negligence. *Id.* at 462. The trial court refused to instruct the jury on res ipsa loquitur, and the jury found for the defendant. *Id.* The Indiana Court of Appeals was called upon to determine whether the trial court's failure to provide the jury with a res ipsa loquitur instruction was reversible error.

There was no evidence indicating that negligent maintenance was the likely cause of the accident. In fact, there had been prior instances of elevator malfunctions due to an insufficient supply of electrical power, and testimony by the person who had investigated the accident suggested that this, and not improper maintenance, was the most likely of several potential reasons for the malfunction here. *Id.* at 464. Because the electrical power supply was the sole responsibility of the Hospital, the court determined that the plaintiff had failed to demonstrate: (1) that the cause of the accident would probably not have occurred absent negligent maintenance, and (2) that the accident could be linked to a cause within the control of the maintenance company. *Id.* The court, therefore, affirmed the trial court's refusal to give a res ipsa loquitur instruction.

*Pedersen* differs from Newell's case in a very significant way. By providing expert testimony concluding that her accident was more likely the result of negligent maintenance than any other possible cause, Newell linked her injury to Westinghouse's actions to a degree sufficient to support a jury finding in her favor. The plaintiff in *Pedersen* failed to adduce any evidence showing that the defendant's negligence was a more probable cause of her injury than the actions of a third party (the Hospital). Her inability to establish negligent maintenance effectively made it impossible to demonstrate that the defendant was in exclusive control of the cause.

Having determined that Newell satisfied her burden regarding res ipsa loquitur with the use of expert testimony, we need not inquire as to whether she could have done so without the aid of expert testimony. Because there was sufficient evidence showing that this accident would not ordinarily occur absent negligent maintenance and that Westinghouse was in exclusive control of the maintenance of the elevators in the Indiana Bell building, we hold that Westinghouse's motion for summary judgment should have been denied. We, therefore, reverse the decision of the trial court and remand the case

for further proceedings consistent with this opinion.